**HUMBLE OIL & REFINING COMPANY,**
Libelant,

v.

**M/V JOHN E. COON, the BARGE M-65 and the BARGE L-1, their engines, tackle, apparel, etc., and Jackson Marine Company, Inc.; Baton Rouge Coal and Towing Company; Cargo Carriers, Inc.; Aetna Casualty & Surety Company; Eagle Fire Insurance Company of New York; Hartford Fire Insurance Company; Tokio Marine & Fire Insurance Company; John Doe, et al., being Underwriters at Lloyds, Respondents.**

No. 5010.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 25, 1962.

Terriberry, Rault, Carroll, Martinez & Yancey, Walter Carroll, Jr., New Orleans, La., for libelant.

Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., and Taylor, Porter, Brooks, Fuller & Phillips, Tom F. Phillips, Baton Rouge, La., for Cargo Carriers, Inc.

Hinds & Meyer, John K. Meyer, Houston, Tex., and Faris, Leake & Emmett, Francis Emmett, New Orleans, La., for Aetna Casualty & Surety Co., Eagle Fire Insurance Co. of New York, Hartford Fire Insurance Co., Tokio Marine & Fire Insurance Co., and Lloyds.

AINSWORTH, District Judge.

Two questions are presented here for decision: (1) Does this court have jurisdiction of a libel against a foreign insurer with no office, place of business or agent for service of process in Louisiana but which insured a vessel for negligent operation with navigation limits in the policy including the waters of Louisiana; and (2) Can a libelant sue the vessel owner's insurers under the provisions of the Louisiana direct action statute despite

the pendency of limitation and exoneration proceedings involving the vessel in a federal district court in Texas?

We answer both questions in the affirmative.

Humble Oil & Refining Company, owner of the tanker Esso Zurich, brought this libel against the M/V John E. Coon, the barges M–65 and L–1, Jackson Marine Company, Inc., a Louisiana corporation, Baton Rouge Coal and Towing Company, a Louisiana corporation, Cargo Carriers, Inc., a Delaware corporation, and named insurers of the M/V Isabel S. Garrett and Bell Marine Service, Inc., a Texas corporation, for damages which occurred on March 31, 1961, in the Mississippi River near Baton Rouge, Louisiana, when the tanker was in a collision with two barges which had become loose from their moorings and drifted, unmanned and unlighted, into the vessel in the early morning hours of that day.

Libelant alleged negligence against the M/V Isabel S. Garrett and Bell Marine Service, Inc., for improperly and insufficiently mooring and lighting the barges, and against the other defendants for their failure to equip the barges with lights and for allowing them to become unmoored and to drift free in the river as a menace to navigation.

Exceptors are the insurers by a combined hull and liability policy of the M/V Isabel S. Garrett and its owner, Bell Marine Service, Inc.

On September 30, 1961, a proceeding for limitation or exoneration from liability was filed on behalf of Bell Marine Service, Inc. in the United States District Court, Southern District of Texas, Houston, Texas. The M/V Isabel S. Garrett at that time was in the jurisdiction of that court.

On November 8, 1961, the present libel in rem and in personam was filed.

## I.

Exception by Tokio Marine & Fire Insurance Company, Ltd. to the Court's Jurisdiction Rationae Personae

The basis of this exception is that respondent insurance underwriter transacts no business, has no office or place of business, and has no officer, director, employee or agent authorized to accept service, in this district or in the State of Louisiana.

The question of what constitutes doing business in a state by a foreign corporation has been the subject of much litigation. The trend, however, as indicated by recent United States Supreme Court decisions, is toward a relaxation of the qualifications required to constitute the transacting of business by a foreign corporation in another state to satisfy constitutional due process. In McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court held that where an insurance contract was delivered by a Texas insurance company in California, premiums were mailed from there, and the insured was a resident of California at time of death, due process did not preclude entry of judgment against the Texas company by a California court. Jurisdiction there was based on a statute subjecting foreign corporations to suit on insurance contracts with residents of that state, even though such companies could not be served with process within its borders, the Texas company having no offices or agents in California and having never solicited or done any insurance business in California apart from the one insurance policy involved. The Court said:

"In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations.

\* \* \* \* \* \*

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental

transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

McGee cited with approval International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, in which the court decided that:

"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

See also Pugh v. Oklahoma Farm Bureau Mutual Insurance Co., D.C., 159 F.Supp. 155 (1958).

The primary question for determination here is whether Tokio Marine & Fire Insurance Company, Ltd., as contemplated by LSA–R.S. 22:1253, is transacting business in Louisiana to an extent where fair play and substantial justice would not be offended in requiring respondent to be governed by the state statute.

The pertinent part of LSA–R.S. 22:1253 provides:

"The transacting of business in this state by a foreign or alien insurer without a certificate of authority or the issuance or delivery by such foreign or alien insurer of a policy or contract of insurance to a citizen of this state or to a resident thereof, or to a corporation authorized to do business therein, is equivalent to an appointment by such insurer of the secretary of state and his * * * successors in office to be the true and lawful attorney upon whom may be served all lawful process in any action, suit or proceeding arising out of such policy or contract of insurance * * *."

It is significant to note that a 1952 amendment substituted the word "or" for "and" following "certificate of authority" in the first sentence of the above-quoted statute, which has the effect of considerably broadening the amenability of foreign corporations to service of process upon the secretary of state in Louisiana.

The insurance policy here under consideration by its terms specifically insured risks and operations in Louisiana and was intended to cover property here. The policy covering the vessel Isabel S. Garrett specifies the navigation limits for the vessel's operations as follows:

"Inland waters of Texas, Louisiana, Mississippi, Alabama and Florida, * * *."

We hold that this was sufficient to constitute transacting of business in Louisiana within the meaning of LSA–R.S. 22:1253. Consequently the corporation is subject to process through the Louisiana Secretary of State, and such process does not violate constitutional due process.

## II.

The Libel against the Vessel's Insurers during the Pendency of the Limitation Proceedings in the Texas Federal Court

Exceptors, insurers of the M/V Isabel S. Garrett and Bell Marine Service, Inc., seek dismissal of this action or alternatively a stay of these proceedings until the final disposition of the limitation proceedings on the basis of Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) and Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954).

■ The Louisiana direct action statute (LSA–R.S. 22:655) authorizes claimants to sue insurance companies directly under liability insurance policies where the damage complained of occurs within the State's territorial limits. The action may be brought against the insurers alone or against both insured and insurer jointly, at the option of claimant. This direct action statute becomes a part of every contract having effect in Louisiana as though written into each policy. Its constitutionality has been upheld specifically in Watson v. Employers Liability Assurance Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1955).

■ The limitation proceedings in the Texas Federal Court have enjoined suits against the M/V Isabel S. Garrett and Bell Marine Service, Inc. The vessel and its owner, however, are not parties to the present libel which is against their insurers. The limitation proceedings, therefore, operate only in favor of the owner and the M/V Isabel S. Garrett.

In the Cushing case there was no opinion of the court because of the division which existed between its members at the time of its decision. Five members held that an action would lie under the Louisiana direct action statute against the vessel's insurer, despite the pendency of limitation proceedings. Four other members disagreed. Mr. Justice Clark, of the five who agreed that the direct action statute would apply, broke the deadlock by voting to stay the direct action proceedings until culmination of the limitation proceedings.[1] Thus, the Cushing case, by a majority of the court,[2] held that there was no clash between Louisiana's direct action statute and the limitation of liability statute of the United States (46 U.S.C.A. §§ 181–189).[3]

■ Nor can we agree with the alternative contention that we should stay these proceedings to await final disposition of the limitation proceedings. Under the alleged facts the M/V Isabel S. Garrett suffered no damage. Therefore, its owner, Bell Marine Service, Inc., has no claim against its insurers for hull damage. The libel here involves an action which occurred in Louisiana waters of the Mississippi River and is against not only the insurers of the M/V Isabel S. Garrett but also against other defendants, including Baton Rouge Towing and Jackson Marine Service, both Louisiana corporations.

As to the facts which might justify a stay order, this case is clearly distinguishable from Cushing where the towboat Jane Smith owned by a Louisiana resident operated only in Louisiana waters and the accident happened in Louisiana; all the parties, save one, resided in the State and both the limitation proceedings and the damage suit were pending in the same court before the same judge (347 U.S. 409, 426, 74 S.Ct. 608).

---

1. This accords with Louisiana State Court holdings which authorize institution of direct action suits against insurers regardless of the insured's immunity to liability. Burk v. Massachusetts Bonding Co., 209 La. 495, 24 So.2d 875 (1944); Brooks v. Bass, 184 So. 222, La.App. (Orleans, 1938); Lusk v. United States Fidelity & Guarantee Co., 199 So. 666, La.App. (Orleans, 1941).

2. Justice Black in the Cushing case, in denying that the Louisiana direct action statute clashes with the federal maritime law, said:
 "The uniformity which the Admiralty Clause of the Constitution requires is limited to one indefinitely defined area— that involving 'the essential features of an exclusive federal jurisdiction.' Just v. Chambers, 312 U.S. 383, 391. [668, 61 S.Ct. 687, 693, 85 L.Ed. 903.] Except in instances falling clearly within this area states are free to make laws relating to maritime affairs. * * * Neither Congress nor this Court has provided or forbidden suits against insurance companies in cases like these, or attempted to establish uniform rules for the regulation of maritime insurance to the exclusion of the states."

3. See also Lake Tankers Corp. v. Henn, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246, 354 U.S. 945, 77 S.Ct. 1421, 1 L.Ed. 2d 1543 (1957).

Exceptors in their brief contend that these differences render Cushing not applicable on the substantive point as to whether an action may be maintained against the insurers under the Louisiana statute.

But Justice Clark used these facts as grounds only for staying the proceeding, not for holding that Cushing was inapplicable to suits under the Louisiana direct action statute. The facts here are clearly distinguishable from those in Cushing insofar as the question of granting a stay is concerned.

It is clear that libelant wishes to proceed in this court and not in the Texas court. On the other hand, the limitation proceedings were initiated by the owner of the M/V Isabel S. Garrett, who apparently wishes to litigate in Texas. Libelant appeared there to assert its claim, and attempted to transfer those proceedings to this court without success because of the opposition of exceptors, and the subsequent ruling of the district court.

No valid reason can be found for staying these proceedings, which are not against the vessel Isabel S. Garrett or its owner but against their insurers under the Louisiana direct action statute, as well as against other defendants, including two Louisiana corporations.[4]

What we do here does not interfere with the Texas limitation proceedings. But it would nullify the rights of libelant, under the Louisiana direct action statute, to require it to await the outcome of the Texas limitation proceedings which it did not initiate, in which the insurers are not parties, and in which two principal Louisiana defendants could not be reached by process of that court.

The exceptions and the exceptive allegations are, therefore, overruled and the stay order is denied.

4. "It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope."

Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L. Ed.2d 368, 359 U.S. 962, 79 S.Ct. 795, 3 L.Ed.2d 769 (1959).