Dorothy S. McKEITHEN, Individually and on behalf of her Deceased husband Charles F. McKeithen

v.

The M/T FROSTA, the M/V GEORGE PRINCE, A/S J. L. Mowinkels Rederi, and the Department of Highways of the State of Louisiana.

In the Matter of A/S J. LUDWIG MOWINKELS REDERI, as owner of the M/T FROSTA, petitioning for exoneration from or limitation of liability.

In the Matter of the DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA ex rel. William J. Guste, Jr., Attorney General, as owner of the M/V GEORGE PRINCE, petitioning for exoneration from or limitation of liability.

Civ. A. Nos. 76–3251, 76–3275 and 76–3654.

United States District Court, E. D. Louisiana.

June 30, 1977.

Daniel E. Becnel, Jr., Reserve, La., Joel T. Chaisson, Destrehan, La., Eldon E. Fallon, A. Remy Fransen, Jr., New Orleans, La., James A. George, Baton Rouge, La., Salvador H. Gutierrez, Jr., John R. Martzell, New Orleans, La., for plaintiff.

Walter Carroll, Jr., Charles F. Lozes, Benjamin W. Yancey, New Orleans, La., for M/T Frosta and A/S J. L. Mowinkels Rederi and Assuranceforeningen Skuld (Gjensidig).

John P. Hammond, John R. Peters, Jr., Henry J. Read, New Orleans, La., for the M/V George Prince.

Nigel Rafferty, New Orleans, La., for Southern American Ins. Co.

Donald Ensenat, New Orleans, La., for Department of Highways, State of Louisiana.

Francis J. Mooney, Jr., New Orleans, La., for New Orleans-Baton Rouge Steamship Pilots Association and Nicholas F. Colombo.

ALVIN B. RUBIN, District Judge:

A non-resident maritime liability insurer has filed a motion to quash service and dismiss this diversity action for lack of jurisdiction on the basis that the State of Louisiana has not by statute asserted personal jurisdiction over, and has provided no method for service of process on, a non-resident insurer that in the regular course of its business insures vessels entering Louisiana waters against liability but does not solicit business, deliver policies or maintain an office in Louisiana.

Important consequences flow from the resolution of this question. If the non-resident insurer is subject to the jurisdiction of this court, then the Louisiana direct action statute, LSA–R.S. 22:655, permitting suits by an injured person directly against the insurer of the tort-feasor, including maritime liability (protection and indemnity) insurers, *Olympic Towing Corp. v. Nebel Towing Co., Inc.,* 5 Cir. 1969, 419 F.2d 230, 236, applies and the insurer may be liable for the full extent of its coverage, even if the insured is successful in limiting its liability pursuant to the federal Limitation of Liability Act, 46 U.S.C. § 185. *Ibid* 419 F.2d, at 234. On the other hand, if this court does not have jurisdiction over the insurer, then the insurer cannot be reached in a direct action and the liability of the insured (and presumably the obligation of the insurer to the insured) may be limited to the value of the vessel by the Limitation Act.

For reasons set forth below, it appears that Louisiana courts would decide that the state has personal jurisdiction over such a corporate defendant, that the state has provided a method of service of process and that this method has been employed properly. Hence, the motion is DENIED.

I.

The M/T Frosta, a vessel owned by Norwegian interests, was involved in a collision with a ferry boat, the George Prince, in the Mississippi River on October 20, 1976. Persons having claims arising out of the collision filed, *inter alia*, direct actions against the protection and indemnity underwriter of the M/T Frosta, Assuranceforeningen Skuld (Gjensidig) ["Skuld"]. They sought to make service of process on the law firm of Terriberry, Carroll, Yancey & Farrell, ("Terriberry") as agent, by service on its managing partner, Benjamin W. Yancey, and also by substituted service on the Secretary of the State of Louisiana.

Skuld is a classic mutual club that undertakes to provide maritime protection and indemnity coverage for its members, all of them Norwegian. Its only offices are in Norway. It has never solicited insurance in Louisiana, and it has never insured any vessel owned by Louisiana interests. As will appear more fully in the later discussion, it has no agents in Louisiana for any purpose whatsoever, unless Terriberry is its agent.

Over 4,500 ships are entered in Skuld, and they engage in worldwide trade. Many vessels entered in Skuld ply Louisiana waters regularly and repeatedly in the course of commerce between Louisiana ports and foreign countries. Within the past twelve months, for example, 44 such vessels entered the Port of New Orleans, some of them several times. The Norwegian vessels entered in Skuld similarly travel the waters of practically every other American seaboard state and many other nations. The vessels that come into Louisi-

ana waters do so as a result of their engaging in worldwide trade; their entry in Skuld is on that basis; Skuld does not invite their entry expressly or specifically for Louisiana.

Terriberry has been Skuld's counsel in New Orleans for over 40 years. It has appeared for Skuld in all litigation in this state. The plaintiffs assert, however, that Terriberry has been more than Skuld's attorney at law, and has been, in fact, Skuld's agent for other purposes. Skuld contends Terriberry has done only what lawyers do; it has assisted in giving legal advice, averting and investigating claims and handling litigation.

The instructions to the masters of vessels entered in Skuld contain a list of Skuld representatives in the principal ports of the world. Some of these representatives are lawyers; others are not. Terriberry is listed as the Skuld representative in New Orleans. Each master is advised to communicate with the Skuld representative in any port in connection with various problems that may arise in that port.

As Skuld's representative, Terriberry has arranged for medical services for members of the crew of a Skuld vessel, has obtained watchmen when necessary in problems relating to stowaways, and has executed bonds and letters of guaranty as security to avoid the arrest of vessels. It receives reports of personal injuries on Skuld-entered vessels. It has also appeared in many admiralty and legal proceedings as counsel of record for Skuld and by virtue of this role, as counsel for Skuld-entered vessels.

## II.

■ The first issue is whether personal jurisdiction over Skuld is governed by Louisiana or federal law. Early consideration of this question gave rise to conflicting decisions. See the discussion by Professors Moore and Lucas, in Moore's Federal Practice, ¶ 4.25[7]. In *Arrowsmith v. United Press International,* 2 Cir. 1963, 320 F.2d 219, overruling *Jaftex Corporation v. Randolph Mills,* 2 Cir. 1960, 282 F.2d 508, Judge Friendly's opinion held that in diversity cases personal jurisdiction is controlled by state law. Although Moore-Lucas espouse the view in their text that *Arrowsmith* was in error and *Jaftex* was correct, their 1976–77 Supplement states, "The *Arrowsmith* rule has been universally adopted." Among the courts that have adopted the state law rule is the Fifth Circuit; its view is succinctly stated in *Mack Trucks, Inc. v. Arrow Aluminum Castings Co.,* 5 Cir. 1975, 510 F.2d 1029, 1031:

> In a diversity case such as this one, a federal district court may exercise in personam jurisdiction over a foreign defendant only if a state court could do so in the proper exercise of state law, here the long arm statute. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1933); *Arrowsmith v. United Press International,* 320 F.2d 219 (2nd Cir. 1963); *Stanga v. McCormick Shipping Corp.,* 268 F.2d 544, 548 (5th Cir. 1959).

See also *Tetco Metal Products, Inc. v. Langhan,* 5 Cir. 1968, 387 F.2d 721; *Atwood Hatcheries v. Heisdorf & Nelson Farms,* 5 Cir. 1966, 357 F.2d 847, 852; *Walker v. Savell,* 5 Cir. 1964, 335 F.2d 536, 540; *Connor v. New York Times Co.,* 5 Cir. 1962, 310 F.2d 133, 134.[1]

Strange as it may seem, Louisiana has not by any statute undertaken to declare explicit standards for determining the foreign marine insurance companies that are subject to the jurisdiction of its courts. Let us review briefly the state of statutory affairs in Louisiana:

## A.

■ LSA–R.S. 13:3201 is Louisiana's general statute with respect to jurisdiction

---

1. Professors Wright and Miller, in their Federal Practice and Procedure, Vol. 4, § 1075, observe that *Arrowsmith* has been unanimously adopted by the circuit courts. They observe also:
   Moreover, although the Supreme Court has not spoken directly to the problem, there is at least some slight indication that it would approve the basic *Arrowsmith* rationale.
   (See their footnote 51 for further discussion).
   *Ibid* at pp. 310–311.

**576**

over nonresidents. The purpose of the statute was to extend the jurisdiction of Louisiana courts over non-resident corporations to the utmost reach permitted by the Constitution of the United States. LSA–R.S. 13:3201, Comment (*a*); *Drilling Engineering, Inc. v. Independent Indonesian Am. Petroleum Co.,* La.1973, 283 So.2d 687; *Mayeux v. Hughes,* La.App.1976, 333 So.2d 273. It does not apply to suits on insurance contracts but relates to causes of action arising from a non-resident's transacting business in the state, committing a tort in the state, or similar conduct. Moreover, the legislature's intention that the statute not extend to suits on insurance contracts is made explicit by a comment:

> It was not felt necessary to extend this section to insurance. Under R.S. 22:1253(A), there is an implied appointment of the Secretary of State as the agent for the service of process on any foreign or alien insurer which is not qualified to do business in Louisiana, but which transacts business in this state or issues or delivers a policy of insurance to a citizen or resident of this state. See, also, *White v. Indiana Travelers Assur. Co.,* 22 So.2d 137 (La.App. 2d Cir. 1945). (Emphasis supplied.)

LSA–R.S. 13:3201, Comment (*c*).

Thus, this statute would not apply to Skuld with respect to the insurance claims made in this case even if it "transacts business" in the state by having Terriberry as its agent. The statute does not assert jurisdiction over a non-resident insurance company for purposes of suit on its policies, and we need not now determine whether a tort suit against Skuld for an act by Terriberry might be filed under it.

### B.

■ Louisiana also has a statute asserting its jurisdiction over watercraft using its territorial waters. LSA–R.S.13:3479. That statute, however, does not even purport to extend Louisiana's jurisdiction to the insurers of these watercraft, for it reaches only those who operate, navigate or maintain a watercraft in the state.

### C.

■ The Louisiana direct action statute, LSA–R.S. 22:655, is not a legislative assertion of jurisdiction over insurance companies, it merely provides claimants a direct right of action against liability insurers when they have a cause of action against the insured or when the insured would be liable but for an immunity personal to him. *Morse v. Hartford Casualty Ins. Co.,* La. App.1974, 301 So.2d 741, 743. Before a claimant may utilize the direct action procedure, the state must have jurisdiction over the insurers, acquired in a manner satisfying due process requirements, together with service of process. *Id.*

### D.

LSA–R.S. 22:1249(A) defines what constitutes transacting an *insurance business* in this state by an "unauthorized foreign or alien insurer." It commences: "Any of the following *acts* in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer is defined to be transacting an insurance business in this state . . . ." (Emphasis supplied.) It then lists six kinds of acts. It does not of itself state whether an insurer that transacts an insurance business in the state, as thus defined, is made subject to the jurisdiction of Louisiana courts. Even if that obvious inference is drawn, however, Section 1249 would not apply here, for Section 1249(B) states:

> This section shall not apply to:

> \*　　\*　　\*　　\*　　\*　　\*

> (3) Transactions in this state involving a policy lawfully solicited, written, and delivered outside of this state, covering subjects of insurance not resident located, or expressly to be performed in this state at the time of issue, and which transactions are subsequent to the issuance of the policy. . . .

> (5) Transactions in this state involving any policy of insurance issued prior to July 31, 1968. . . .

> (7) Insurance on vessels, crafts, hulls, cargoes, marine builders risks, marine

protection and indemnity or other risk including strikes and war risks commonly insured under ocean or wet marine forms of policy.

Section 1249 does not apply here, first, because the policy is one of marine protection and indemnity insurance exempt under 1249(B)(7); second, because the suit is based on transactions subsequent to issuance of a policy that was lawfully solicited, written and delivered outside this state on a subject (the vessel) not then in the state, hence exempt under 1249(B)(3); and, third, because the policy was issued before July 31, 1968, hence exempt under 1249(B)(5).

LSA–R.S. 22:1253(A) states:

The transacting of business in this state by a foreign or alien insurer without a certificate of authority is equivalent to an appointment by such insurer of the Secretary of State and his successor or successors in office to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding maintained by the commissioner of insurance or arising out of such policy or contract of insurance, and the said transacting of business by such insurer is a signification of its agreement that any such service of process is of the same legal force and validity as personal service of process in this state upon it.

It thus serves two purposes. The clause making the appointment of the Secretary of State "of the same legal force and validity as personal service of process" amounts to an assertion of jurisdiction over a foreign or alien insurer transacting business in this state. It also provides a method of service of process.

But Section 1253 does not in terms extend to P and I insurance. Skuld contends that the term "transacting of business" in Section 1253 is limited in its meaning to what is defined as transaction of business in Section 1249, and, therefore, that Section 1253 cannot extend jurisdiction beyond that provided for in Section 1249(A), nor to insurers exempted by Section 1249(B). It finds support for this thesis in the fact that Section 1253 once was the sole statute dealing with foreign insurers. That Section was amended by a 1968 statute (Act 54 of 1968) adopted as part of a plan that enacted Section 1249 (Act 52 of 1968). Skuld concludes that the two provisions, both part of the Louisiana Insurance Code, are now wedded. In its view, Sections 1249, 1252 (added by Acts of 1972, No 238, § 1), and 1253, form an intentional comprehensive scheme by which Louisiana has said what an unauthorized foreign insurer may or may not do without subjecting itself to the jurisdiction of its courts.

If this is correct, then neither Section 1253 nor any other Louisiana statute applies to any P and I policy issued by an unauthorized non-resident insurer. This would be so no matter where the vessel is located (because the Section 1249(B)(7) exemption is not limited to insurance on vessels outside Louisiana)—or how regularly such policies are issued—and even if the policy is actually delivered in the state (because Section 1249(B)(7) is not limited to policies delivered outside the state). Louisiana courts would have no jurisdiction over any unauthorized non-resident marine protection and indemnity insurer—or any other unauthorized marine insurer—regardless of the effect or nature of its contacts with the state.

Of course, the legislature might have reached this result deliberately or it might have fallen into it inadvertently. If the lawmakers have left a hiatus in the law, it is a legislative, not a judicial, function to fill it. But the absence of an express legislative provision would not likely, of itself, lead a Louisiana court to imply that, of all foreign insurance companies that may do business in Louisiana, only marine insurers escape completely the jurisdiction of its insurance commissioner and that, of all corporations that may do business in Louisiana, only those insurers are outside the reach of its courts.

### III.

Let us turn then to the difficult question whether a Louisiana court would consider

that Louisiana has asserted jurisdiction over companies such as Skuld. If it would, then there is no constitutional barrier to jurisdiction in this case, for Skuld's contacts with Louisiana more than satisfy the constitutional due process requirements as interpreted in *International Shoe Co. v. State of Washington*, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

At the outset we note again that, at least with respect to any non-resident corporation, other than an insurance company, Louisiana has attempted to assert the utmost reach that the Constitution permits. LSA–R.S. 13:3201, Comment (*a*); *Drilling Engineering, Inc.*, *supra*; *Mayeux, supra*. See also, McMahon, Louisiana Legislation of 1964—Personal Jurisdiction over Non-Residents, 25 La.L.Rev. 28, 32. LSA–R.S. 13:3201 did not refer to insurers only because Section 1253 applied to them. This at least implies a similar intent with respect to the scope of Section 1253.

That section, in its pristine form prior to the 1968 amendment, was interpreted to assert Louisiana jurisdiction over a non-resident P and I insurer in two federal cases. *Humble Oil and Refining Co. v. M/V JOHN E. COON*, E.D.La.1962, 207 F.Supp. 45, decided by then District Judge Robert Ainsworth, and *Continental Oil Company v. The London Steamship Association*, decided by Judge Edwin Hunter, W.D.La.1967, CA. No. 13185, aff'd, 5 Cir. 1969, 417 F.2d 1030. After its amendment, it was interpreted the same way by this court. *In re Sincere Navigation*, CA. 68–2254, unreported opinion of April 27, 1970. (A copy of that opinion is appended.)

*Sincere* cannot be distinguished on the basis suggested by Skuld that "the court found as a fact [which it did] that Oceanus, the P and I underwriter, was actually underwriting [a host of risks] in Louisiana, and had, in Louisiana, an *actual* agent with underwriting authority." For these "facts" would not suffice to make Section 1253 applicable. If *Sincere* cannot be distinguished, Skuld urges that the course taken in it was 180° in error. The point is important enough that it ought to be re-examined, without considering *Sincere* to be dogma, even though *Sincere* has been affirmed in an appeal in which the issue was not raised. 5 Cir. 1976, 529 F.2d 744.

In *Humble Oil & Refining Co. v. The M/V JOHN E. COON, supra*, the insurer, Tokyo Fire & Marine wrote no business in Louisiana, had no office or place of business in Louisiana, had no officer, director, employee, or agent authorized to accept service in Louisiana. The insurance involved was the running-down clause of a hull policy issued by Tokyo Fire *in* Texas *to* a Texas corporation. The policy's trading limits were expressly and specifically stated: "inland waters of Texas, Louisiana, Mississippi, Alabama, and Florida . . . ." The accident happened in Louisiana. Judge Ainsworth, then on the district bench, held that the fact that the policy expressly insured risks and operations in Louisiana was sufficient to satisfy the "minimum contacts" test, and Tokyo Fire & Marine was held to be suable directly in Louisiana for the Louisiana collision by substituted service. It does not suffice, however, to attempt to distinguish the case by the fact that the policy mentioned Louisiana waters, for nothing in the Louisiana statutes differentiates such a policy from one that merely insures the vessel in all waters. The relevance of the express reference to Louisiana was that this sufficed, even absent regular contacts with the state, to satisfy due process requirements. Here due process is admittedly met.

The next case was the London Steam-Ship Owners' Mutual Association Limited, supra. Judge Hunter's decision is unreported, but it was affirmed on its merits by the Fifth Circuit in *Continental Oil Company v. London Steam-Ship Owners' Mutual Insurance Association*, 5 Cir. 1969, 417 F.2d 1030. Judge Hunter had found the London Club amenable to suit on the basis of the COON case, but had decided in its favor on the merits. The Fifth Circuit affirmed on the merits but on somewhat different grounds: that the Louisiana Direct Action Statute did not apply to damage by the insured vessel to a stationary platform in the Outer

Continental Shelf.[2] The Fifth Circuit, 417 F.2d, at 1033, note 12, said: "We have not assayed underwriter's attack on its amenability to service of process."

Thus, while it cannot be said that the Circuit Court found jurisdiction, it is obvious that Judge Hunter did—and that the Circuit Court did not consider him patently in error.

At the time both of these cases were decided, Section 1253(A) read as follows:

The transacting of business in this state by a foreign or alien insurer without a certificate of authority *or the issuance or delivery by such foreign or alien insurer of a policy or contract of insurance to a citizen of this state or to a resident thereof,* or to a corporation authorized to do business therein, is equivalent to an appointment by such insurer of the secretary of state and his successor or successors in office to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding arising out of such policy or contract of insurance, and the said issuance or delivery is a signification of its agreement that any such service of process is of the same legal force and validity as personal service of process in this state upon it. (Emphasis supplied.)

The italicized words were deleted in the 1968 amendment. That phrase will be referred to later.

■ Section 1253(A) as amended, is not pellucid. With the clause already mentioned dropped from its otherwise unaltered text,[3] the later words, "or arising out of *such* policy or contract of insurance" lack any reference point. Skuld says this means that these words refer to Section 1249, but it is not clear why the words would leap back over 2 pages in the insurance code, and over Sections 1252, 1251, and 1250 to find such a fulcrum for their meaning. It is more likely that the legislature inadvert-

ently failed to provide the reference and that the statute should be read:

The transact[ion] of business in this state by a foreign or alien insurer without a certificate of authority is equivalent to an appointment by such insurer or the Secretary of State and his successor or successors in office to be its due and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding maintained by the commissioner of insurance or arising out of [each] policy or contract of insurance [issued in transacting such business] . . .

Thus, the mere delivery of a policy to a resident is no longer reached by Section 1253 (because that phrase has been deleted). The results of policy delivery are now dictated by Section 1249, but Section 1253 has a vitality and scope independent of Section 1249.

■ It may be said that this tinkers with the language. However, if this is not what the statute means, then it is difficult to discern the meaning of the clause with respect to actions by the commissioner of insurance. For clearly the commissioner is intended to have authority to sue *any insurer* transacting business in this state. If this were not so, and if the commissioner has authority only over transactions that constitute doing business under Section 1249, then a thousand fraudulent P and I policies could be issued in London or Little Rock on Louisiana vessels to Louisiana residents and the commissioner would be unable to take any action.

In addition to the Louisiana statutes already quoted, attention must be given LSA–R.S. 22:1252, which prohibits any person from acting as an agent in Louisiana for an insurer not authorized to do business in the state, and exempts from its provisions the representatives of an unauthorized insurer "in investigating and adjusting losses or otherwise complying in this state with the terms of its insurance contracts made in a state wherein the insurer was authorized

---

**2.** In *Olympic Towing Corp. v. Nebel Towing Co., Inc.,* 5 Cir. 1969, 419 F.2d 230, affirmed in *Continental Oil,* the Court held that the Louisiana Direct Action Statute applies to marine P and I insurance.

**3.** The words "maintained by the commissioner of insurance" were also added by the amendment but are of no importance here.

and in which the property or risk was located or residing at the time of the execution of the contract."

This implies that what Terriberry has done and still does for Skuld is not prohibited. Terriberry does nothing that Skuld has not undertaken to do by its contracts made in a foreign country where Skuld was authorized, and where the vessel was located. Skuld's services do not go beyond what can correctly be called proper benefits of an insurance contract even if they do extend further than merely investigating and adjusting losses.

As has already been indicated, Section 1253 has 2 parts: A service of process portion and a jurisdictional portion. The difficult words referring to "such policy or contract of insurance" appear only in the service of process part. The jurisdictional phrase is unmodified. This lends support to the thesis that, as stated by the legislature with respect to 13:3201, the term "transacting of business" as used in Section 1253 in 1967, both in its "service of process" provisions and its jurisdictional provision, and as still used twice in that same section today, refers to actions that are sufficient to confer jurisdiction under the federal constitutional requirements. If we assume that the legislature intended to strip Section 1253 of substantive meaning, it is more plausible to conclude that it did not do enough, than it is to surmise that Louisiana's law makers intended to import Section 1249 into Section 1253 and simply failed to say so.

■ If Skuld did not transact business by Terriberry's acts—expressly exempted by Section 1252—it did so by Skuld's activities in regularly and repeatedly maintaining insurance on a host of vessels navigating Louisiana territorial waters. The clause deleted from Section 1253(A) in 1968 certainly did not refer to such regular contacts; it related only to delivery of a policy to a citizen or resident of this state.

This interpretation gives meaning to both Section 1249 and 1253, and it takes into account also Louisiana's general legislative policy reflected in its direct action statute. All of these are part of the same insurance code. The direct action statute is procedural; the other statutes are jurisdictional. But they are not from alien bodies of law to be read as if separated by water-tight bulkheads. Section 1249(A) makes the doing of any of certain specified acts alone constitute the transacting of insurance business in the state. Thus, receiving or collecting any premium from a Louisiana resident "[whether] effected by mail or otherwise," is transacting business. Section 1249(B) states, *"This Section* [Emphasis supplied] shall not apply to" specified exemptions of which marine insurance is one; it does not state "Section 1253 shall not apply to" these specified exemptions, nor does it state, "This Chapter does not apply to marine insurance." Section 1249 and its "acts" definitions do not apply to marine insurance. On the other hand, if marine insurers regularly and repeatedly do business in the state in other ways, they are subject to its jurisdiction by Section 1253.

Lest it be said the point escaped attention, let us note that this interpretation does not smooth out all the wrinkles. It is hard to reconcile all of the exceptions in Section 1249(B) with this interpretation. But there is no interpretation of the infelicitous congregation of words in Section 1249 and in Section 1253 that will accommodate all of them. Neither this court nor Louisiana's courts wrote them; it is this court's duty only to interpret them as a Louisiana court would. Assuming that Louisiana courts would not readily accept an interpretation of Louisiana's statutes that would let non-resident marine insurers escape regulation entirely, and considering the latitude extended generally to non-resident service by Louisiana's jurisprudence,[4] as well as the scope of the jurisdiction given its commissioner of insurance, this court has reached the result that it thinks would be reached by the state courts.

4. In addition to the cases cited previously, see *Easterly v. Dynamic Enterprises, Inc.,* La.App. 1976, 334 So.2d 467; *Fisher v. Premiere Realty Co., Inc.,* La.App.1974, 298 So.2d 447; *Dodson v. Fontenot,* La.App.1973, 285 So.2d 328; Cf. *Cambre v. St. Paul Fire & Marine Ins. Co.,* La.App.1976, 331 So.2d 585.

For these reasons the motion to dismiss for lack of jurisdiction is DENIED. The motion to quash service on Terriberry as an agent is GRANTED. The motion to quash service on the Secretary of State is DE-NIED.

## APPENDIX

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| DOROTHY DIETZ, WIFE OF AND RAMON J. GUTIERREZ, | CIVIL ACTION |
| | NO. 68–2243 |
| Plaintiff | |
| versus | SECTION "C" |
| S. S. HELENA, | |
| Defendant | |

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF SINCERE NAVIGATION CORPORATION, AS OWNER OF THE S/S HELENA, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION |
| | NO. 68–2254 |
| | SECTION "C" |

and CONSOLIDATED CASES

| | |
|---|---|
| CA 68–2250 | CA 69–2854 |
| CA 69–2340 | CA 69–2855 |
| CA 69–2341 | CA 69–2889 |
| CA 69–2535 | CA 69–2899 |
| CA 69–2613 | CA 69–2903 |
| CA 69–2628 | CA 69–2923 |
| CA 69–2742 | CA 69–2924 |
| CA 69–2743 | CA 70–40 |

Gerald J. Gallinghouse, Esq.
United States Attorney

Allen van Emmerik, Esq.
George Frilot, Esq.
Gerald J. Martinez, Esq.
Joseph M. Brush, Esq.
C. Arthur Rutter, Esq.
David H. Burrow, Esq.
Neal D. Hobson, Esq.
Milton E. Brener, Esq.
Jefferson deR. Capps, Esq.
A. J. McNamara, Esq.
Salvador E. Guttierrez, Esq.
Joseph Horne, Esq.
Julian B. Humphrey, Esq.
Jerry G. Jones, Esq.
Patrick L. Burke, Esq.
Raymond A. McGuire, Esq.
E. Jack Green, Jr., Esq.
Charles M. Steen, Esq.
Louis B. Merhige, Esq.
Anthony Vesich, Esq.
Alfred M. Farrell, Jr., Esq.
Attorneys for Plaintiffs

Joy S. Miller, Esq.
Attorney for Defendant

582

ALVIN B. RUBIN, District Judge:

In these actions for wrongful death, personal injuries, and other damages, the various plaintiffs sued the vessel that allegedly caused the accident and joined the vessel's insurers as defendants under the Louisiana Direct Action Statute, LSA–R.S. 22:655. The insurers moved to quash service and, alternatively to dismiss the actions against them. The two questions presented for decision are: (1) Whether the Direct Action Statute applies in this case; and (2) Whether, if the Statute does apply, the insurers are amenable to this court's process through substituted service on the Louisiana Secretary of State.

## APPLICABILITY OF DIRECT ACTION STATUTE

The insurance policies were issued in London and delivered to the assured, Sincere Navigation Corp., through its agent, Wheelock, Marden and Stewart, Ltd., in Hong Kong. Sincere is incorporated under the laws of the Republic of China and is domiciled in Taipei, Taiwan. Premiums were paid in London and Hong Kong. The accident sued on happened in the Mississippi River near White Castle, Louisiana, when the S/S HELENA collided with a U.S. Coast Guard buoy-tender, the WHITE ALDER.

The insurers are British companies or associations who are not "authorized" to do business in Louisiana, i. e., they have not officially procured a certificate of authority from the Louisiana Secretary of State to do business in Louisiana as required by LSA–R.S. 12:301. They have written and now write policies covering Louisiana assureds, and they stipulate that the number of policies thus written is substantial. However the insurers assert that they do not solicit any of this business; that the assureds' agents, often through an insurance broker, approach them in London to write the insurance.

The Fifth Circuit Court of Appeals has disposed of most of the issues involved in an authoritative decision, *Continental Oil Company v. London Steam-Ship Owners' Mut. Ins. Assn.,* 5 Cir. 1969, 417 F.2d 1030. In five separate memoranda of authorities, counsel for defendants has zealously explored every possible argument that might serve to distinguish that case or demonstrate its incorrectness. Citing other authorities,[1] the defendants contend that, before service of process can be made in Louisiana based on a foreign insurance policy issued to a foreign shipowner, some connection must be shown between the insurer's business in Louisiana and the cause of action sued on. It suggests that the Fifth Circuit mistakenly relied on *Humble Oil & Refining Co. v. M/V JOHN E. COON,* E.D. La.1962, 207 F.Supp. 45, and that the *Continental Oil* case did not "assay" the insurers' attack on their amenability to service of process (footnote 12, 417 F.2d at 1033) because it assumed (in footnote 33, 417 F.2d at 1039) that service was "based on the underwriter's activities for others than the owner of" the vessel there involved.

But that is the very basis for service of process here. So the assumption is applicable to this case. And we rely therefore on the *Continental Oil* opinion as dispositive of the issues here presented. The court there said that the Louisiana Direct Action Statute, LSA–R.S. 22:655, was inapplicable to an action arising on the High Seas where there was no showing that admiralty remedies were unavailable or incomplete.[2] But it is clearly applicable here because the accident happened in the Mississippi River,

---

1. See, *e. g., Bergeron v. Sabine Dredging & Construction Co., Inc.,* W.D.La.1968, 281 F.Supp. 223. See also, *McGee v. International Life Ins. Co.,* 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; *International Shoe Co. v. State of Washington,* 1945, 326 U.S. 310, 66 S.Ct. 154,

90 L.Ed. 95; *Hanson v. Denckla,* 1957, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

2. An ocean going vessel collided with a fixed offshore production platform, thus providing maritime jurisdiction under the Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 740.

in Louisiana territorial waters. In *Continental Oil,* the court affirmed its ruling in *Olympic Towing Corp. v. Nebel Towing Co., Inc.,* 5 Cir. 1969, 419 F.2d 230, saying:

> "*Olympic Towing Corp. v. Nebel Towing Co., Inc.,* 5 Cir., 1969, 419 F.2d 230, A.M.C. (No. 26386, July 9, 1969) holds that for a Louisiana inland based maritime occurrence the direct action Insurer has a direct liability beyond that of the Shipowner held to be entitled to limit liability, 46 U.S.C.A. §§ 181 et seq." Footnote 7, 417 F.2d at 1032.

Nor did the court give more than short shrift to the argument that the Louisiana Direct Action Statute has a lesser scope when sought to be applied to "ocean marine" insurance. It said:

> "Without more we reject again, as so often and most recently done in *Olympic Towing,* the underwriter's plea that we reconsider these earlier decisions: *Coleman v. Jahncke Serv., Inc.,* 5 Cir. 1965, 341 F.2d 956, 960–961, cert. denied, 1966, 382 U.S. 974, 86 S.Ct. 538, 15 L.Ed.2d 465; *Lovless v. Employers' Liab. Assurance Corp.,* 5 Cir. 1955, 218 F.2d 714; *Cushing v. Maryland Cas. Co.,* 5 Cir., 1952, 198 F.2d 536, 538, vacated, 1954, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806.
>
> They urge that the terms 'ocean marine' in LRS 22:655 and 'marine insurance' in LRS 22:1252 compel a determination that Louisiana intended to exclude marine insurance from the Direct Action Statute." Footnote 13, 417 F.2d at 1033."

And the court concluded, "it does not offend the constitutional imperative for the uniformity of admiralty for the Louisiana Direct Action Statute to apply to maritime cases occurring on inland waters of Louisiana * * *." 417 F.2d at 1037.

## AMENABILITY TO SUBSTITUTED SERVICE

Isolating the question not assayed in the *Continental Oil* decision, there is still ample support for the validity of the substituted service of process. LSA–R.S. 22:1253 makes transacting business in this state by a foreign or alien insurer not authorized or qualified to do business in Louisiana "equivalent to an appointment by such insurer of the Secretary of State * * * to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding * * * arising out of such policy or contract of insurance * *."

In the District Court opinion in *Continental Oil,*[3] Judge Hunter said:

> "The insurance policy here under consideration includes risks and operations in Louisiana. This is sufficient to constitute transacting of business in Louisiana within the meaning of LSA–R.S. 22:1253. We find that such process does not violate constitutional due process. In so holding we follow and adopt the reasoning of the District Court of the Eastern District of Louisiana in *Humble Oil & Refining Company v. M/V JOHN E. COON,* 207 F.Supp. 45 (1962)."[4]

If the Direct Action Statute (R.S. 22:655) is read in pari materia with the Service of Process Statute (R.S. 22:1253), the conclusion reached by Judge Ainsworth in the *Humble Oil* case and by Judge Hunter in *Continental Oil* is correct. The limitations in LSA–R.S. 22:1249 do not extend to Section 1253. The labors of the Court of Appeal in *Continental Oil* were for naught if service there was invalid. A plausible ar-

3. Civil Action No. 12,185 (August 24, 1967) (Unreported).

4. The district court, however, dismissed the direct action suit on the ground, affirmed in the *Continental Oil* decision, 417 F.2d at 1033, that the Direct Action Statute did not apply because the accident occurred outside Louisiana and the Statute has no extraterritorial effect.

gument can be made for the notion that the Service of Process Statute, read alone, does not extend to this situation. But to read it thus in splendid isolation would ignore the clearly voiced later intention of the Louisiana legislature.

## CONSTITUTIONAL ISSUES

The defendant urges that, if the Louisiana statutes reach it, it is denied due process.[5] The lengthy argument of this position is addressed primarily to jurisdiction with respect to other insurers, now no longer parties, who allegedly do not regularly issue policies affecting Louisiana assureds. Should an effort be made again to join these parties, the issue will be then presented; for the present it is moot. However, it is clear that the state may assert jurisdiction over an insurer that issues a substantial number of policies affecting risks within its jurisdiction, where this business is regular, not isolated, or sporadic, without infringing the Fourteenth Amendment.[6]

Hence the motions to quash and to dismiss are denied.

/s/ Alvin B. Rubin
UNITED STATES DISTRICT JUDGE

New Orleans, Louisiana

April 20th, 1970

---

5. See the cases cited in note 1 *supra*.

6. *Humble Oil & Refining Company v. M/V JOHN E. COON,* E.D.La.1962, 207 F.Supp. 45; *Continental Oil Company v. The London*

*Steam-Ship Owners' Mut. Inc. Assn.,* W.D.La. 1967, F.Supp. (Civil Action No. 12,185, August 24, 1967). *Cf. McGee v. International Life Ins. Co.,* note 1 *supra.*