MAGNUS MARITEC INTERNATIONAL, INC., Holland Chemical International, Inc., and Compania Colombiana de Terminales, S.A., Atlas Economic Shipstores, Ltd., Costas D. Xistris, Stedman Marine Supply Company, Greek Seaman's Pension Fund, Intervenors,

v.

SS ST. PANTELEIMON, her engines, tackle, etc., and Saint Olga Maritime Co., Ltd., her owner and/or operator and Kavavias (USA) Inc., her owner and/or operator.

Civ. A. No. 75–H–1596.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 25, 1978.

G. Byron Sims, Brown, Teed & Sims, William C. Bullard, Baker & Botts, JoAnn M. Dahl, Eastham, Watson, Dale & Forney, Frank Markantonis, Houston, Tex., for plaintiffs.

Frank E. Caton, Crain, Winters, Deaton, James & Briggs, Ed Bluestein, Jr., Fulbright & Jaworski, Kenneth D. Kuykendall, Royston, Rayzor, Vickery & Williams, Houston, Tex., for defendants.

## ORDER

SINGLETON, District Judge.

The above-styled-and-numbered cause is a consolidated action under Fed.R.Civ.P. 9(h) and within the admiralty and maritime jurisdiction of the court brought by various contract and tort claimants against the defendant vessel; the vessel operator, St. Olga Maritime Company, Ltd. (St. Olga); and the operator's insurer, The West of England Ship Owners Mutual Protection and Indemnity Association (West of England). West of England has filed a motion

to quash service of process and to dismiss for want of personal jurisdiction under Fed. R.Civ.P. 12(b). Sun Oil Company (Sun) and Suntide Refining Company (Suntide) have filed motions to intervene as contract lien claimants.

## WEST OF ENGLAND'S MOTION TO DISMISS

Defendant West of England is a mutual protection and indemnity association with its principal place of business in Luxembourg. Members of the association contract with the club for protection and indemnity against liabilities which the members sustain in the operation of their vessels. St. Olga contracted with the association under standard P & I club terms for operation of the SS ST. PANTELEIMON.

During a portion of 1974 and 1975, the SS ST. PANTELEIMON was operated under bareboat charter by St. Olga. In September, 1974, plaintiff Holland Chemical International, Inc., a Panamanian corporation, entered into a time charter party with St. Olga.

Various maritime lien claims were filed against the SS ST. PANTELEIMON and St. Olga, including a claim for collision damages to a dock in Columbia, a claim for material, supplies, and work on the vessel at Houston, and various cargo damage claims, some of the cargo having been loaded in Houston. Actions were brought to establish these liens and for foreclosure, and plaintiff Firstmark Corporation filed a complaint to foreclose a preferred ship's mortgage on the vessel. The various actions have been consolidated, and the vessel was seized in Houston and sold at foreclosure.

Proceeds of the sale are in the registry of the court, and settlement has been made by Firstmark Corporation with certain other lien claimants. As well as proceeding against this fund, plaintiff Compania Colombiana de Terminales seeks recovery for the Columbian dock damages, and plaintiff Holland Chemical seeks indemnification for cargo damage claims from St. Olga and West of England. St. Olga has not responded to this suit.

Service on West of England was made pursuant to article 2031b, V.A.T.S., through the Secretary of the State of Texas. West of England maintains no office or agent in Texas and argues that it does not have sufficient contacts with this forum to sustain this court's exercise of in personam jurisdiction over it under article 2031b.

■■■ The court finds that notwithstanding the fact that the indemnity agreement in question was executed in London, West of England transacts business in this forum to the extent it insures foreign vessels entering Texas waters and is subject to in personam jurisdiction in this forum for causes of action arising out of such vessels' activities in Texas waters. *See McKeithen v. M/T FROSTA*, 435 F.Supp. 572 (E.D.La. 1977); *Humble Oil & Refining Co. v. M/V JOHN E. COON*, 207 F.Supp. 45 (E.D.La. 1962). Plaintiff Compania Colombiana de Terminales's claim for Columbian dock damages clearly does not arise out of the SS ST. PANTELEIMON's activities in Texas and therefore cannot be brought against West of England in this forum without West of England's consent. As to plaintiff Holland Chemical's cargo claims, a hearing is required to determine whether such claims arose out of the SS ST. PANTELEIMON's activities in Texas. Even if it is decided that personal jurisdiction over West of England exists as to these cargo claims, such a decision would not allow the joinder of plaintiff Compania Colombiana de Terminales's dock damage claim, and therefore West of England's motion to dismiss will be granted as to the dock damage claim. *Cf.* 3A Moore's Federal Practice ¶ 18.10[5] at 18–99.

## SUN AND SUNTIDE'S MOTION TO INTERVENE

■■■ Sun and Suntide sought leave on August 10, 1977, to file an intervening complaint against the SS ST. PANTELEIMON, in rem, for $27,823.71, representing certain supplies and materials in the nature of cumene furnished to the vessel in April and May of 1975. Plaintiff Firstmark Corpora-

tion opposes the intervention on the ground that Sun and Suntide's delay of one year and eight months (from the November 14, 1975, sale of the SS ST. PANTELEIMON and this court's order confirming the sale and noting default) in filing the intervention is inexcusable and prejudicial to Firstmark Corporation.

From depositions taken of employees of Sun and Suntide, it appears that these companies had actual notice of the seizure and sale of the SS ST. PANTELEIMON by October 22, 1976. Furthermore, it appears that by this time Sun and Suntide knew or should have known that their claim was one against the vessel and vessel owner and not against Georgia Pacific Corporation. Between December 17, 1976, and August 8, 1977, Firstmark Corporation entered into settlements with several other claimants resulting in the voluntary dismissal with prejudice of such claimants' claims.

Sun and Suntide have offered no reasonable excuse for their delay in seeking leave to intervene after such time as they had actual notice of the seizure and sale of the SS ST. PANTELEIMON. Recognizing that prejudice is not established merely by the possibility that the sums Firstmark Corporation may realize on its *own* claim might be reduced, the court finds merit in Firstmark's contention that it has been prejudiced as to the settlements it has made with other other claimants, during the period in which Sun and Suntide's delay appears inexcusable and in reliance on the court's order noting default of November 14, 1975. To permit Sun and Suntide to intervene after a ten-month delay for which no reasonable excuse has been offered and during which other claimants entered into settlements would render the court's order noting default meaningless. Accordingly, the court finds that Sun and Suntide are barred by the doctrine of laches from prosecuting their claims against the funds realized from the sale of the SS ST. PANTELEIMON.

Therefore, for the reasons given above, it is ORDERED:

(1) that West of England's motion to dismiss be, and the same is hereby GRANTED, as to the claim of Compania Colombiana de Terminales for dock damages;

(2) that as to West of England's motion to dismiss the claim of Holland Chemical International, Inc., a hearing be held on Thursday, January 19, 1978, to determine whether such claim arose out of the activities of the SS ST. PANTELEIMON in this forum; and

(3) that the motion to intervene of Sun Oil Company and Suntide Refinery Company be, and the same is hereby, DENIED.