KLEES, Judge.
Plaintiff appeals the granting of an exception to the in personam jurisdiction of the district court urged by defendant Attorneys’ Liability Assurance Society, Ltd. [“ALAS”]. We affirm.
Plaintiff, First Guaranty Bank of Hammond, brought this suit against the law firm of Jones, Walker, Waechter, Poitev-ent, Carrere & Denegre [“Jones, Walker”] alleging legal malpractice. Also made a defendant was ALAS, the professional liability insurance carrier for Jones, Walker.
ALAS, which is based in Bermuda, is a non-resident insurer. Although the Louisiana direct action statute, R.S. 22:655, gives plaintiff a right of action against ALAS, an independent basis of personal jurisdiction is necessary in order for ALAS to be sued in this state. Jones v. M.F.A. Mutual Ins. Co., 398 So.2d 10 (La.App. 3rd Cir.1981), writ denied, 399 So.2d 586 (La.1981).
Personal jurisdiction over non-resident insurers is governed by the Insurance Code, R.S. 22:1 et seq. Since ALAS does not have a certificate of authority from the Louisiana Commissioner of Insurance, the particular provisions applicable to it are to be found in Part XXYII (Sections 1249-71) of the Code, entitled “Unauthorized Insurance”. With regard to service of process, section 1253(A) provides that the “transacting of business” in this state by a foreign or alien unauthorized insurer is equivalent to the appointment by the insurer of the Secretary of State as its agent for service of process. Relying on this provision, plaintiff served ALAS through the Secretary of State using the procedure outlined in section 1253(B).
The exception filed by ALAS alleged that the service was invalid because ALAS was not “transacting business” in the state within the meaning of R.S. 22:1253, and in the alternative, because the exercise of personal jurisdiction over ALAS by a Louisiana court would be unconstitutional. The trial court maintained the exception without giving written reasons. After reviewing the evidence, we find that the exception was properly maintained because ALAS’s actions in Louisiana do not constitute the transaction of business as defined by the Insurance Code.
The term “transacting business” as used in R.S. 22:1253 is clearly defined in 22:1249, which reads:
§ 1249. Transacting a business of insurance by unauthorized insurer defined
A. Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer is defined to be transacting an insurance business in this state:
(1) The making of or proposing to make, as an insurer, an insurance contract.
(2) The solicitation, taking or receiving of any application for insurance contract.
(3) The receiving or collection of any premiums, membership fees, assessment, dues or other considerations for any insurance contract.
(4) The issuance or delivery of contracts of insurance to residents of this state or to corporations or persons authorized to do business in this state.
(5) The transaction of any matter subsequent to the execution of such a contract and arising out of it.
(6) The doing or proposing to do any insurance business in substance equivalent to any of the foregoing in a manner designed to evade the provisions of the insurance laws of this state,
(B). This section shall not apply to:
[[Image here]]
(8) Transactions involving risks located in this state where the policy or contract of insurance for such risk was principally negotiated and delivered outside this state, and was lawfully issued in a state or foreign country in which the foreign or alien insurer was anuthorized to do an insurance business, and where such insurer has no contact with this state except in connection with inspections or losses required by virtue of the contract or policy of insurance covering the risk located in this state.
*597 Upon reviewing the facts in this case, which are not in dispute, we conclude that the exception in part 8 of section 1249(B) clearly applies to ALAS, and therefore, the activities of ALAS in Louisiana do not constitute the transaction of business as defined by the legislature.
ALAS is a mutual insurance society which was organized under the laws of Bermuda and has its corporate offices there. AIL of its members are law firms with forty or more attorneys, who operate as a mutual club. ALAS was founded in 1979 in response to a study by Marsh & McLennan which showed the potential cost effectiveness of this type of professional liability coverage for medium-to-large sized law firms. Jones, Walker was one of ALAS’s founding members. Mr. Robert Acomb, a partner at Jones, Walker who has handled the firm’s professional liability insurance since 1974, testified in his deposition that he made the initial contact with the Bermuda law firm that was organizing ALAS, and was sent an application. The application was filled out by Jones, Walker in New Orleans and returned to Bermuda by means of a Maryland courier service. When ALAS obtained commitments from thirty-five firms, the society was chartered, and Jones, Walker’s first policy was issued to ALAS’s attorneys in Bermuda for subsequent delivery to the firm. Mr. Acomb testified that he took delivery of that first policy, as he has of all subsequent renewals, at the annual meeting of ALAS held in Bermuda (and later at other locations outside the United States). Renewal applications are mailed to New Orleans, completed there, and mailed back to Bermuda. Premium invoices are also mailed to Jones, Walker and the premiums are wired from the firm’s bank in New Orleans to ALAS’s bank in Bermuda.
ALAS insures three other firms in the New Orleans area, all of which follow virtually the same procedures with regard to completing applications, paying premiums and taking delivery of policies. In 1981, ALAS sent a representative to New Orleans for several days to discuss loss prevention techniques with members of Jones, Walker and the other firms it insures.
In light of these facts, we find that ALAS unquestionably falls within the language of the exception noted in section 1249(B)(8). As provided in the exception, the risk (legal malpractice) is located in Louisiana, but the policy was “principally negotiated and delivered,” as well as “lawfully issued” in Bermuda, where ALAS is authorized to do business. We do not agree with plaintiff’s argument that the policy was “principally negotiated” in Louisiana merely because the application was filled out in New Orleans. The completion of the application is only one step in the negotiation procedure, and it is the only one that took place in Louisiana, with the initial contact, the drafting of the policy, and the approval of the application all having occurred in Bermuda.
The plaintiff’s other argument with regard to section 1249 is that the visit to New Orleans made by the ALAS representative to discuss loss prevention was “the transaction of any matter” subsequent to and arising out of an insurance contract as defined in 1249(A)(5), and therefore constitutes the transaction of business in Louisiana. This contention might be true if it were not for the language of 1249(B)(8), which clearly states that the statute shall not apply in cases where the insurer has no contact with this state “except in connection with inspections or losses required by virtue of the contract or policy of insurance covering the risk located in this state.” The existence of an insurance contract normally obliges the insurer to periodically inspect or evaluate the risk being covered by that policy. In our opinion, ALAS’s review of the loss prevention practices utilized by its insureds falls within the ambit of activities contemplated by the phrase “inspections ... required by vitue of the contract or policy.” Therefore, if the visit to Louisiana by the ALAS representative fits under the exception noted in section 1249(B)(8), as we find that it does, it cannot serve as a basis for establishing jurisdiction under *598 1249(A)(5). To read the statute otherwise would totally negate the effect of the exception.
Another argument made by plaintiff is that section 1253 can bestow jurisdiction independently of section 1249. This contention is supported by the case of McKeithen v. M/T Frosta, 435 F.Supp. 572 (E.D.La.1977), in which a federal district court held that a foreign maritime liability insurer was subject to jurisdiction by virtue of section 1253 even though section 1249 did not apply because the situation fit under the exception noted in 1249(B)(7). The McKeithen court, faced with a ferry accident caused by a foreign vessel in Louisiana waters and numerous injured plaintiffs who would have no remedy if the vessel’s insurer were not subject to jurisdiction, specifically rejected the argument that the term “transacting business” in section 1253 is limited in its meaning to what is defined as transacting business by section 1249. Id. at 577. To this extent, we believe that McKeithen is wrong. Article 17 of the Civil Code requires that laws which are in pari materia, or on the same subject matter, be construed in reference to each other. Section 1253 merely provides that the transaction of business in this state by an unauthorized insurer constitutes the appointment of the Secretary of State as the insurer’s agent for service of process. Section 1249, which is in the same part of the Insurance Code, is entitled “Transacting a business of insurance by unauthorized insurer defined.” It is inconceivable to us that the legislature intended anything other than that the phrase “transacting business” in section 1253 and wherever else it appears in the part of the Code on unauthorized insurance, be given the exact meaning stated in section 1249.
In conclusion, we find that ALAS is covered by section 1249(B)(8) of the Insurance Code and therefore is not subject to the jurisdiction of a Louisiana court. Accordingly, the district court correctly maintained the exception of lack of personal jurisdiction and dismissed plaintiff’s suit as against defendant Attorneys’ Liability Assurance Society.
AFFIRMED.