728 F.2d 699
 1984 A.M.C. 2408
 In the Matter of TA CHI NAVIGATION (PANAMA) CORPORATION S.A., etc.
TRAVELERS INDEMNITY COMPANY, Surety to Ta Chi Navigation
(Panama) Corporation, S.A., Plaintiff-Appellant,
v.
UNITED STATES of America, and U.S. Navy as Owner and
Operator of USS DAHLGREN (DDG 43), Defendants-Appellees.
 No. 82-3385.
 United States Court of Appeals,
Fifth Circuit.
 March 23, 1984.
 
 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Edward J. Koehl, Jr., Robert T. Lemon, II, New Orleans, La., for Travelers Indem. Co.
 Robert B. Deane, Robert B. Fisher, Jr., New Orleans, La., for Ta Chi Navigation (Panama) Corp. S.A.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, REAVLEY and RANDALL, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 This was a petition for limitation of liability by the owner of a merchant vessel (SS EURYBATES) that collided at sea with a Navy vessel (USS DAHLGREN). The Navy paid off the claim for damages brought by cargo of EURYBATES, the carrying ship. The District Court, 513 F.Supp. 148, granted full reimbursement to the Navy from the private vessel for the amount paid to the cargo claimants, holding that the private carrying vessel was 100% at fault for the collision and had no "error in navigation" defense to cargo's claim under the Carriage of Goods by Sea Act, 46 U.S.C. Sec. 1304(2), because the owner's failure to use due diligence to make EURYBATES seaworthy was causally related to the collision. 46 U.S.C. Sec. 1304(1). Thus, instead of applying the traditional approach in a mutual fault collision of balancing the responsibility for the total damages, including cargo damages, according to the relative degrees of the vessels' faults, see, e.g., Allied Chemical Corp. v. Hess Tankship Co., 661 F.2d 1044, 1058-59 (5th Cir.1981), the District Court gave full reimbursement to the Navy on the basis of subrogation. This was because the Navy, who was later found to have no liability to cargo, paid in good faith an obligation of the carrying vessel. The appellant (Travelers) is the surety on an ad interim stipulation for the value of the private vessel filed by its owners as an integral part of its petition for limitation of liability.
 
 
 2
 Long after the running of the appeal period on the judgment, the surety filed a Rule 60(b) motion, asking the Court to amend the judgment to expressly provide and declare that the Navy's recovery of the cargo settlement was not subrogation of a claim for cargo damages, but a part of the Navy's collision damages. This was undoubtedly an effort to recover on an indemnity agreement given by the hull underwriters to Travelers that incorporated the hull policy, which expressly excluded all liabilities for loss or damage to cargo. We hold that the merits of the District Court's judgment are not before us, because the judgment was not appealed. Because we further hold that the denial of the Rule 60(b) motion was not an abuse of the District Court's discretion, we affirm the denial of the Rule 60(b) motion.
 
 
 3
 On August 7, 1975, the SS EURYBATES departed Cristobal, Canal Zone for Santo Domingo, laden with general cargo. Shortly after passing the sea buoy, the EURYBATES collided with the DAHLGREN, lead vessel in a convoy of U.S. and Colombian Naval vessels proceeding toward the Panama Canal. In addition to damage sustained by both vessels, the cargo aboard EURYBATES suffered substantial damage.
 
 
 4
 Appellee, Ta Chi Navigation (Panama) Corporation S.A. (Ta Chi), owner of the EURYBATES, filed this action seeking exoneration from, or limitation of liability. 46 U.S.C. Sec. 183, 185. The statute and Rule F of the Supplemental Rules of the Federal Rules of Civil Procedure provide that the owner of the vessel shall deposit with the Court a sum equal to the value of the interest of such owner in the vessel and freight, "or approved security therefor." Ta Chi posted an ad interim stipulation (bond) with appellant Travelers Indemnity Company (Travelers) as surety. Travelers obtained a standard indemnity guarantee from the hull underwriters[1] of Ta Chi in which the underwriters agreed to indemnify Travelers for any liability Travelers might incur as surety to Ta Chi. However, the counter guarantees given by the hull underwriters to Travelers provided:
 
 
 5
 The extent of our obligation under this indemnity shall not exceed our liability in accordance with the terms of the policies of insurance....[2]
 
 
 6
 Claims were filed by the United States in the limitation proceeding. In addition, the cargo actions (that were later settled by the United States) were brought against both Ta Chi and the United States and were consolidated with the limitation proceeding.
 
 
 7
 At commencement of the traditionally bifurcated trial of liability, attorneys for cargo interests and the United States submitted to the Court a proposed consent judgment providing that the United States conceded 10% fault and agreed to be liable for 100% of cargo's claims, $603,207.58. See THE CHATAHOOCHEE, 173 U.S. 540, 555, 19 S.Ct. 491, 43 L.Ed. 801 (1899).
 
 
 8
 When the consent judgment was submitted to the Court by attorneys for the United States and cargo interests, attorneys for Ta Chi objected on the ground that an admission of 10% fault and liability by the United States should not be binding upon the limitation petitioner. However, Ta Chi did not object to the valuation of cargo's damages in the consent decree.
 
 
 9
 The District Court agreed that Ta Chi was not bound by any provision in the consent decree concerning fault for the collision. Nevertheless, after trial on liability, the Court held that the EURYBATES was solely at fault. This meant that the damages had to be fixed.
 
 
 10
 Prior to trial of the United States' damages, Ta Chi moved for summary judgment with respect to the United States' claim for recovery over of the $603,207.58 consent cargo judgment, relying upon the Carriage of Goods by Sea Act, 46 U.S.C. 1300, 1304(2), which holds that "Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from (a) Act, Neglect or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship." The Court denied the motion for summary judgment.
 
 
 11
 After trial of damages[3] the Court supplemented its earlier opinion, finding that the collision not only occurred as a result of sole fault on the part of EURYBATES, but was caused more specifically by the incompetence of the EURYBATES' master, and that this constituted an unseaworthy condition. Further, EURYBATES' owners failed to prove that they used due diligence to make the vessel seaworthy (by hiring a competent master) before and at commencement of the voyage, and therefore were not only denied the benefits of the COGSA exemption, but also those of the Limitation of Liability Act. Thus, EURYBATES would have been liable in a suit by the cargo directly against EURYBATES. See 46 U.S.C. Sec. 1304(1). Because the Navy--as declared by the Court after trial on liability--actually had no fault in the collision, it had paid the cargo on an obligation that was owed, not by the Navy, but by EURYBATES. Because the District Court held that the Navy had paid the obligation of EURYBATES under circumstances that did not make it a mere volunteer,[4] the Navy was awarded recovery of the payments to cargo under a theory of subrogation. The Court explained, "Technically, this is not an item of damages sustained by the DAHLGREN in the collision, as was the situation in U.S. v. Atlantic Mutual Ins. Co., 343 U.S. 236, 72 S.Ct. 666, 96 L.Ed. 907 (1952)."
 
 
 12
 After judgment, no appeal was taken either by Ta Chi or Travelers, the surety. It is uncontradicted that the hull underwriters paid to the Navy the portions of the judgment relating to the DAHLGREN's temporary and permanent collision repairs, the detention, and other collision items (see note 3). However, the underwriters refused to pay the item designated "Cargo interests' settlement" on the ground that this loss was not covered by the hull policy, which covered collision damages but not liabilities on cargo claims (see note 2). Because the indemnity agreement given by the hull underwriters to the surety was limited by the terms of the hull policies, this leaves the surety[5] exposed for at least the difference between the $750,453.30 covered by the hull underwriters and the $1,026,481.51 surety bond.
 
 
 13
 Upon learning that the hull underwriters did not consider themselves responsible for cargo damages under the hull policy and the indemnity agreement, Travelers, as surety, filed a "Motion to Modify Judgment Pursuant to Rule 60(b)" on March 30, 1981, one day less than a full year after the judgment was entered. Travelers urged the Court to correct what it contended was a clear error of law in classifying the reimbursement of the Navy for amounts paid to cargo as cargo damages and not collision damages, citing United States v. Atlantic Mutual Ins. Co. (the ESSO BELGIUM), 343 U.S. 236, 72 S.Ct. 666, 96 L.Ed. 907 (1952). Travelers pointed out that, as surety, it received notice that an adverse judgment had been entered only after the time for appeal from the judgment had run. Thus, Travelers argued that modification of the judgment and opinion was the only remaining means for Travelers to protect its rights in this proceeding.[6] After a hearing, the District Court denied the motion without comment.
 
 
 14
 Much of the argument in the briefs concerns whether Travelers, as surety on an ad interim stipulation for the value of the vessel in a limitation proceeding, is a "party" with standing to file a Rule 60(b) motion to amend the judgment or to appeal. We need not decide that issue, because whatever its resolution, we must affirm. If the surety was not a "party," then the Court was correct in denying the Rule 60(b) motion. Conversely, assuming that Travelers is a "party," we affirm the denial of Rule 60(b) relief for reasons stated below.
 
 
 15
 The merits of the District Court's judgment are not before us, and we do not rule on the finding of EURYBATES' unseaworthiness, the finding that the DAHLGREN was not at fault to any degree, the classification of the Navy's recovery over of the cargo payments as cargo damage subrogation rather than collision damages, or any other matter contained in the judgment. No appeal was taken from this judgment, and the denial of a Rule 60(b) motion does not bring up the underlying judgment for review. Browder v. Director, Dept. of Corrections, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); United States v. O'Neil, 709 F.2d 361, 373 (5th Cir.1983); Chavez v. Balesh, 704 F.2d 774, 777 (5th Cir.1983); Chick Kam Choo v. Exxon Corp., 699 F.2d 693, 694 (5th Cir.1983); United States v. 329.73 Acres of Land, 695 F.2d 922, 925 (5th Cir.1982). Moreover, on appeal, our review is limited to whether the District Court abused its discretion in denying the Rule 60(b) motion. Id.; Alvestad v. Monsanto Co., 671 F.2d 908 (5th Cir.1982).
 
 
 16
 Many times recently this Court has stressed that a Rule 60(b) appeal may not be used as a substitute for the ordinary process of appeal once the appeal period has passed. This is particularly true where, as here, a mistake of law is alleged as the primary ground of the appeal. Chick Kam Choo v. Exxon Corp., 699 F.2d 693, 695 (5th Cir.1983); Alvestad, 671 F.2d at 912; Gary v. Louisiana, 622 F.2d 804 (5th Cir.1980), cert. denied, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981). See also, 7 J. Moore, Federal Practice, p 60.27 at 353 (1982); 11 Wright & Miller, Federal Practice and Procedure Sec. 2864 at 215 (1983). Here, Travelers' 60(b) motion was based on a contention that the Court had made an error of law in classifying the Navy's recovery for payments to cargo as cargo damages and not collision damages. In certain unusual situations we have allowed district courts in the context of a Rule 60(b) motion to correct their "obvious errors" of law, such as overlooking controlling statutes or case law. E.g., Meadows v. Cohen, 409 F.2d 750 (5th Cir.1969) (motion made within appeal period). Although Travelers uses the war-weary rhetorical epithet of "manifest" or "beyond question" in depicting the claimed error, the briefs demonstrate at best only that the question is arguable. The District Court's reasoning was deliberate and not a mere loose usage of terms. Thus, the question should have been raised on appeal, and a Rule 60(b) motion was an improper vehicle for raising or testing it.
 
 
 17
 Moreover, the ultimate question Travelers sought to raise was a question of coverage of the cargo settlement under Ta Chi's hull policy and thus, by incorporation, under the indemnity agreement given by the hull underwriters to Travelers as surety. So far as revealed by the record, this insurance coverage aspect of the case was not presented to the District Court until the Rule 60(b) motion, almost one year after the judgment was rendered. By then, another action had been filed by Travelers specifically to decide the insurance and indemnity issues (see note 6), and with all the affected interests represented as parties. Even if the District Court could reopen its judgment on the basis of this alleged error, if error it was, we cannot conclude in the present context that the Court's failure to do so was an abuse of discretion.
 
 
 18
 By way of excuse for not having raised its argument by appeal, Travelers asserts that it received notice that an adverse judgment had been entered only after the appeal period had run. Travelers argues that the hull underwriters and Ta Chi had failed to notify Travelers of the entry of the judgment until long after the time for appeal. However, there is no basis for any contention that either the hull underwriters or Ta Chi had agreed to notify Travelers of the entry of the judgment in time for Travelers to appeal.
 
 
 19
 The District Court was entitled to conclude that the failure of Travelers to at least inquire as to the status of the case for almost a year "amounts to want of adequate care or ignorance of the rules" sufficient to justify the denial of the 60(b) motion. O'Neil, 709 F.2d at 374. In any event such conclusion was not an abuse of the trial court's discretion.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Ta Chi's P & I underwriters were not a party to the indemnity agreement
 
 
 [2]
 There is no question that the American Institute Hull Clause (January 1970) provided in Collision Clause Amendment A:
 Provided that this clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay or shall pay in consequence of, or with respect to:
 (d) Cargo or other property on or the engagements of the vessel.
 
 
 [3]
 The Court fixed the damages of the Navy as follows:
 Temporary repairs $14,126.00
Survey Fees 3,518.00
Permanent repairs 420,576.00
DAHLGREN detention 253,847.50
Ammunition handling 18,071.00
PRATT fuel costs 40,314.00
Cargo interests' settlement 603,207.00
 
 
 [4]
 Under the rule of THE CHATAHOOCHEE, supra, the Navy was faced with the prospect of being fully liable to the cargo if it were later to be found as little as 1% at fault in the collision. It was uncertain at that point what the finding on liability would eventually be. The District Court emphasized that the amount paid to the cargo claimants by the Navy did not include pre-judgment interest, which, if the claim had gone to trial, would have increased the claim by 30-40%
 Aside from the legal significance, if any, of the formal consent judgment (as between the Navy and the cargo interests), counsel for Travelers at oral argument acknowledged with commendable candor that the cargo settlement by the Navy was prudent. See, e.g., Weyerhauser S.S. Co. v. United States, 372 U.S. 597, 599, 83 S.Ct. 926, 927, 10 L.Ed.2d 1 (1962); Ionian Glow Marine, Inc. v. United States, 670 F.2d 462 (4th Cir.1982).
 
 
 [5]
 Apparently, Ta Chi, the owner of EURYBATES, is now insolvent
 
 
 [6]
 Travelers also filed a separate action in the same Court against the hull underwriters and against the P & I club, which purportedly had coverage for cargo damage at the time of the casualty but had no relation to Travelers by indemnity agreement or otherwise. "Travelers Indemnity Company v. Calvert Fire Insurance Company, Underwriters at Lloyd's of London, and the Institute of London Underwriters, as subscribers to Hull Insurance Policies Nos. MA-47800 and CAH-5035, and the London Steam-Ship Owners' Insurance Association, Ltd., Civil Action No. 82-1390 'H'(3)." In that suit, Travelers, as surety, seeks to recover the portion of the judgment pertaining to the cargo loss, up to the unsatisfied limits of Travelers' bond. On April 29, 1983, the Justice Department, representing the Navy, was made a defendant. Thus, all parties are represented in the pending case