798 F.2d 826
 TRAVELERS INDEMNITY COMPANY, Plaintiff-Appellee,
v.
CALVERT FIRE INSURANCE COMPANY, et al., Defendants-Appellants,
The London Steamship Owners' Mutual Insurance Association,
Ltd., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
TA CHI NAVIGATION (PANAMA) CORPORATION, et al., Defendants,
Fenton Insurance Company, et al., Defendants-Appellants.
 No. 85-3019.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 29, 1986.
 
 Benjamin W. Yancey, M.D. Yager, New Orleans, La., for London steamshipping.
 Robert B. Deane, New Orleans, La., for Calvert, et al.
 Robert T. Lemon, II, Allen Van Emmerick, Edward J. Koehl, Jr., New Orleans, La., for Travelers.
 J. Paul McGrath, Asst. Atty. Gen., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for U.S.A.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before WILLIAMS, GARWOOD, and JONES, Circuit Judges.
 OPINION
 GARWOOD, Circuit Judge:
 
 
 1
 This case ultimately arises from the collision of the S/S EURYBATES, a Panamanian cargo ship, insured by the appellants insurance companies, and a United States naval destroyer in international waters off the Panama Canal. Appellant The London Steamship Owners' Mutual Insurance Association, Ltd. (The London Club), which provided P & I coverage to the EURYBATES' owner, appeals the district court's exercise of personal jurisdiction over it. Appellant Calvert Fire Insurance Company, representing a group of hull underwriters (Hull Underwriters), which provided collision coverage on the EURYBATES, appeals the reformation of the counter indemnity agreement between Hull Underwriters and appellee Travelers Indemnity Company (Travelers), which furnished the EURYBATES' Supplemental Rule F bond, making Hull Underwriters liable for cargo, as well as collision, damages resulting from the accident. We determine that The London Club is not shown to have had sufficient minimum contacts with Louisiana for the district court to exercise personal jurisdiction over it in this action, and we accordingly reverse the portion of the judgment related to The London Club. We hold that the evidence is sufficient to support the district court's finding that there was a mutual mistake in the terms of the counter indemnity agreement between Travelers and Hull Underwriters since at the time the Rule F bond was issued and the counter indemnity agreement signed both parties intended the agreement to include all items covered by the bond, including the amount the Navy paid in settlement to the owner of the cargo carried by the EURYBATES. Accordingly, we affirm the reformation of the counter indemnity agreement.
 
 Facts and Proceedings Below
 
 2
 This suit is one in a series resulting from the collision of the S/S EURYBATES and the destroyer USS DAHLGREN off the Panama Canal on August 8, 1975. Both vessels were damaged in the collision and the EURYBATES' cargo was also damaged.[1] Collision liability coverage on the EURYBATES was provided its owner by Hull Underwriters, a group of underwriters whose membership is fifty percent American and fifty percent foreign. Calvert Fire Insurance Company is the lead American company for Hull Underwriters, and throughout the litigation served as lead underwriter and representative of the hull underwriting group. Liability coverage respecting cargo aboard the EURYBATES was provided under a mutual protection and indemnity policy (P & I)[2] issued to the vessel's owner through The London Club.[3]
 
 
 3
 After the collision, the owner of the EURYBATES, Ta Chi Navigation (Panama) Corporation (Ta Chi), a foreign national corporation headquartered abroad and apparently owned by non United States interests, filed suit in the United States District Court for the Eastern District of Louisiana pursuant to Supplemental Rule F of the Federal Rules of Civil Procedure seeking limitation of liability. Ta Chi was represented by counsel furnished by Hull Underwriters. The United States government, on behalf of the United States Navy, also filed an action against Ta Chi in the same court for damages to the destroyer resulting from the accident. Hull Underwriters furnished counsel also represented Ta Chi in that suit. As required by Supplemental Rule F of the Federal Rules of Civil Procedure, Robert Deane, counsel for Hull Underwriters acting on instructions from Hull Underwriters and on behalf of Ta Chi, filed a bond for the value of the EURYBATES to prevent its arrest. Travelers was the surety on this bond. Travelers provided the terms of the counter indemnity agreement between Travelers and Hull Underwriters, which followed the standard London form. In the counter indemnity agreement, each hull underwriter promised to pay its portion of the total value of the ship "in accordance with the terms of the policy of insurance." Travelers did not seek any indemnification from the P & I carrier, The London Club, but relied upon Hull Underwriters to indemnify it for the entire amount of the bond.
 
 
 4
 Concurrent with the filing in Louisiana of the limitation action, four cargo interests brought suit against Ta Chi in the United States District Court for Puerto Rico for damages sustained in the collision. The London Club selected counsel for Ta Chi in the Puerto Rico litigation to defend the cargo claims. The cargo interests and counsel for Ta Chi selected by The London Club jointly consented to transfer the cargo suits to the United States District Court for the Eastern District of Louisiana so that all actions would be consolidated in the limitation trial in Louisiana. Following the transfer and consolidation, The London Club-selected counsel did not represent Ta Chi, which continued to be represented by counsel furnished by Hull Underwriters. Prior to the limitation trial, the United States government, assuming it would be found partially at fault, settled with the cargo owners, paying them one hundred percent of the agreed-upon cargo damages.[4]
 
 
 5
 In the limitation proceeding, the district court ultimately found that the EURYBATES was solely at fault for the collision and that Ta Chi was liable for all damages. Matter of Ta Chi Navigation (Panama) Corp., S.A., 513 F.Supp. 148 (E.D.La.1981). The court rejected the ship's COGSA "error in navigation defense," which would have exempted it from liability to cargo, finding that the EURYBATES was unseaworthy because it was manned by an incompetent crew. A prerequisite to any of the COGSA defenses is a showing that the ship was seaworthy. Since the Navy was not at fault, it was not liable to cargo, and since the EURYBATES did not have a COGSA defense, it was liable to cargo. The district court found that the damages that the Navy paid to cargo therefore were not collision damages, but rather were cargo damages, and that Ta Chi was liable to the Navy for those damages because the Navy was an equitable subrogee of Ta Chi's debt to cargo. 513 F.Supp. at 156-157.
 
 
 6
 After the district court rendered its decision in the limitation proceeding, Hull Underwriters concluded that since the damages paid by the Navy to cargo were not collision damages, but were cargo damages, the amount was not covered by the hull insurance policy. Consequently, Hull Underwriters assertedly was not liable for that part of the Rule F bond covering the cargo loss paid by the Navy, and refused to indemnify Travelers for the entire amount of the bond. Since the district court's decision was to Hull Underwriters' advantage in this respect, it decided not to appeal, but it did inform the P & I insurance broker of the district court's decision. P & I had not participated in the limitation action, but the broker for Hull Underwriters contacted a broker that represented The London Club and met with representatives from The London Club. No one informed Travelers of the limitation proceeding decision or Hull Underwriters' determination that it was not liable for the full amount of the bond. Travelers learned of the district court's decision after the sixty-day period for an appeal had run, and unsuccessfully sought under Federal Rule of Civil Procedure 60(b) to have the judgment reformed to make all the damages collision damages, claiming that it should have been informed of the outcome of the limitation proceeding. We sustained the district court's denial of Rule 60(b) relief, holding that "the question should have been raised on appeal, and a Rule 60(b) motion was an improper vehicle for raising or testing it," and that Hull Underwriters owed no obligation to Travelers to inform it of the outcome of the limitation proceeding in time for it to file an appeal. Matter of Ta Chi Navigation (Panama) Corp. S.A., 728 F.2d 699, 703-04 (5th Cir.1984). The London Club was not ever a party to the limitation proceeding (or to the Puerto Rico proceeding).
 
 
 7
 Travelers then brought the present declaratory judgment action in the United States District Court for the Eastern District of Louisiana against Hull Underwriters and against The London Club seeking to reform the counter indemnity agreement to require Hull Underwriters to pay the entire amount of the bond, and alternatively to make The London Club pay for the cargo damages. In the district court, The London Club asserted that the court lacked personal jurisdiction over it because the suit did not arise out of activities in Louisiana and The London Club did not have sufficient contacts with Louisiana. In addition, The London Club alleged various policy defenses. The district court found that it had personal jurisdiction over The London Club and rejected its policy defenses.[5]
 
 
 8
 The district court reformed the indemnity agreement between Hull Underwriters and Travelers on three grounds. First, the court found that the parties mutually intended at the time of the issuance of the bond for Hull Underwriters to be liable for the entire amount of the bond. Second, it found that Hull Underwriters was estopped from denying that it owed Travelers the full amount of the bond because Travelers had relied to its detriment upon Hull Underwriters' assurances that it would be responsible for the entire amount of the bond. Third, the court determined that Hull Underwriters was liable to Travelers because Hull Underwriters had breached a fiduciary obligation owed to its principal, Ta Chi. The court held that Hull Underwriters had a fiduciary obligation to tell Travelers that there was no coverage under the hull policy because Hull Underwriters represented Ta Chi, its principal, which owed a full indemnity obligation to Travelers.
 
 
 9
 The London Club and Hull Underwriters bring the present appeal.[6]
 
 Discussion
 Jurisdiction Over The London Club
 
 10
 In its answer to Travelers' complaint, The London Club asserted that the district court lacked personal jurisdiction over it. The district court found that it had personal jurisdiction over The London Club because of The London Club's contacts with Louisiana through the vessels that it insured and, alternatively, by The London Club's consent. We disagree and reverse.
 
 
 11
 When a nonresident defendant timely questions a federal district court's in personam jurisdiction over it, the plaintiff asserting jurisdiction has the burden of proving that the court has jurisdiction over the defendant. Walker v. Newgent, 583 F.2d 163, 166 (5th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979). See also Southwest Offset, Inc. v. Hudco Publishing Co., 622 F.2d 149, 152 (5th Cir.1980); Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co., 469 F.2d 416, 418 (5th Cir.1972). Where such a jurisdictional issue is ruled on motion prior to trial and without a full evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdiction, so that the allegations of the complaint are taken as true except as controverted by the defendant's affidavits and conflicts in the affidavits are resolved in the plaintiff's favor. Brown v. Flowers Industries, Inc., 688 F.2d 328, 332 (5th Cir.1982). However, "at any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence," Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 n. 2 (9th Cir.1977), or, as otherwise stated, "[e]ventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at a trial." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981).[7] "Whatever degree of proof is required initially, a plaintiff must have proved by the end of trial the jurisdictional facts by a preponderance of the evidence." Forsythe v. Overmyer, 576 F.2d 779, 781 (9th Cir.), cert. denied, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). Here, lack of personal jurisdiction was not raised by motion but rather in The London Club's answer, which is a proper manner of raising the issue, Roumel v. Drill Well Oil Co., 270 F.2d 550, 555 (5th Cir.1959). There was no pretrial hearing or determination of the question, and it was disposed of in connection with the trial on the merits, which was to the court without a jury. Accordingly, plaintiff Travelers had the burden of proving by a preponderance of the evidence facts necessary to sustain the district court's exercise of in personam jurisdiction over the nonresident defendant The London Club. We hold that Travelers failed to discharge this burden, and that the district court thus erred in exercising in personam jurisdiction over The London Club.
 
 
 12
 Subject matter jurisdiction of Travelers' suit against The London Club, which is not questioned, was based on 28 U.S.C. Secs. 1332(a)(3) (diversity) and 1333(1) (admiralty). Travelers' suit was entirely an action in personam, and not in rem or quasi in rem. Travelers' complaint alleged that The London Club was a foreign corporation organized under the laws of a country other than the United States, that it was engaged in underwriting and insuring certain maritime risks, and that it "does business in the State of Louisiana." Service of process on The London Club was effected by serving the Secretary of State of Louisiana (who then mailed the process to The London Club in London, England), all presumably pursuant to section 1253 of the Louisiana Insurance Code. LSA-R.S. 22:1253. See McKeithen v. M/T FROSTA, 435 F.Supp. 572 (E.D.La.1977). The London Club was amenable to the personal jurisdiction of the court below only if a Louisiana court could have acquired personal jurisdiction over The London Club on the same cause of action. See Point Landing v. Omni Capital International, Ltd., 795 F.2d 415, 427, (5th Cir.1986) ("a federal district court has no personal jurisdiction over a defendant who cannot be reached by the long-arm statute of the state in which the district court sits").
 
 
 13
 We apply a two-prong test to determine if the district court properly exercised personal jurisdiction over the defendant. First, we determine whether the state would assert jurisdiction over the defendant. Second, we determine whether the defendant has minimum contacts with the state such that the traditional notions of substantial justice and fair play are not offended. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Because we find that appellee did not meet the burden of proving that The London Club had the requisite minimum contacts with Louisiana, we need not address the question of whether Louisiana would assert jurisdiction.
 
 
 14
 Louisiana could not assert specific jurisdiction over The London Club since the suit neither arose out of nor is related to any contacts of The London Club with Louisiana. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). The accident did not happen in Louisiana waters, the London Club did not solicit business in the state, the policy was not issued in Louisiana, no premiums were collected in or paid from the state, and none of the parties to the policy were Louisiana residents. In fact, the EURYBATES never made it to port in Louisiana. So far as this record shows, it had never been in Louisiana waters. When a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contact with the forum, it is said to be exercising general jurisdiction over the defendant. Id. at 1872 n. 9. Exercise of such general jurisdiction does not offend due process if there are sufficient contacts between the state and the foreign corporation. Id. at 1872; Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In Helicopteros, the Supreme Court said that in order to exercise general jurisdiction the foreign corporation must have systematic and continuous contacts with the forum. The evidence before the district court showed that The London Club is not authorized to do business in Louisiana, has not appointed any Louisiana agent for service of process, has neither any place of business nor any employees or assets in Louisiana, and does not solicit business there. There is no evidence that The London Club issued any insurance policies in Louisiana or in which any Louisiana resident was an insured, or that it received any premiums from Louisiana. The London Club does list in its manual for shipowners and masters a New Orleans law firm to contact in case problems arise while the insured vessel is in Louisiana, but no evidence was introduced to show the amount of work this law firm performed for The London Club or its insureds. Neither was there any evidence introduced that these attorneys served as a general agent of The London Club or participated in any activity on its behalf other than acting as local legal counsel for The London Club or its insureds. Compare McKeithen, supra.
 
 
 15
 Appellees argue that The London Club's action in maintaining P & I insurance on some vessels which sometimes entered Louisiana waters creates sufficient minimum contact to establish jurisdiction. Apart from insuring these vessels, there is no evidence that The London Club insured any Louisiana-related risks, and with respect to the vessels there is no evidence that any were either based in Louisiana or engaged in other than strictly international commerce. Appellants rely on Puerto Rico v. The SS ZOE COLOCOTRONI, 628 F.2d 652 (1st Cir.1980), cert. denied, 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981), and McKeithen, supra. Both of these cases are properly distinguishable. Of most significance, each involves a suit based on an accident occurring within the forum jurisdiction, an important factor tending to support specific jurisdiction. Further, there was in each case a stronger showing than hereof the defendant's general contacts with the forum. In SS ZOE COLOCOTRONI, the First Circuit found that Puerto Rico had jurisdiction over an English P & I club similar to The London Club based on the club's having insured numerous vessels which regularly called in Puerto Rico. However, there the accident upon which the suit was based occurred in Puerto Rican waters and damaged Puerto Rican coastal beaches. Further, the plaintiffs in SS ZOE COLOCOTRONI established that vessels insured by the P & I club frequented Puerto Rico's waters and that a number of insurance-related services were performed for these ships while they were in Puerto Rico.[8] In McKeithen, where the United States District Court for the Eastern District of Louisiana found that it had jurisdiction, the accident occurred in Louisiana waters, and the insurance policy, unlike the P & I policy involved here, specifically stated that it included coverage of navigation in Louisiana waters. Moreover, the McKeithan plaintiff presented evidence that forty-four vessels insured by the club entered the Port of New Orleans, some of them more than once, in the past twelve months. In contrast, appellee here offered very little proof of The London Club's activities related to Louisiana. Appellee offered a Martindale-Hubbell listing showing that a New Orleans law firm listed The London Club as a main client. However, unlike the plaintiffs in SS ZOE COLOCOTRONI, no evidence was offered here regarding the number or kind of services performed by this firm for The London Club, nor the number of vessels insured by The London Club that regularly travel in Louisiana waters. Appellee did file a list of approximately twenty-five cases pending in the United States District Court for the Eastern District of Louisiana in which The London Club apparently insured the allegedly offending vessel for cargo damages (in one or two of which The London Club furnished bond through the vessel's counsel). In slightly more than half of them, The London Club was named a defendant. But no showing was made that any of these suits were based upon the ship's actions in Louisiana, and indeed the basis on which jurisdiction was asserted in those cases is not shown. The evidence offered by appellee of The London Club's activities in Louisiana was simply too tenuous to establish a general jurisdictional presence there. Since there was no showing of sufficient contacts to establish general jurisdiction, and the suit did not arise out of activities in Louisiana, there was no basis for the district court's exercise of personal jurisdiction over The London Club. Accord Mangus Maritec International, Inc. v. SS ST. PANTELEIMON, 444 F.Supp. 567 (S.D.Tex.1978).
 
 
 16
 The district court also asserted jurisdiction over The London Club on the theory that it had waived any defense to personal jurisdiction. When four cargo interests filed suit in federal court in Puerto Rico, The London Club retained counsel to represent Ta Chi in that action. In the limitation proceeding, Ta Chi, acting through counsel furnished by Hull Underwriters, procured an order restraining prosecution of all other suits against it arising out of the collision, and requiring all claims to be made in the litigation proceeding. Thereafter, Ta Chi, acting through counsel furnished by The London Club, filed in the Puerto Rico proceeding a motion, based on the restraining order issued in the limitation proceeding, to dismiss the Puerto Rico proceeding without prejudice or, alternatively, to stay it pending decision in the limitation proceeding. Subsequently, the cargo plaintiffs and Ta Chi, acting through The London Club furnished counsel, filed in the Puerto Rico proceeding a stipulation that the case be transferred to the United States District Court for the Eastern District of Louisiana, where the limitation proceeding was pending. This stipulation contains a statement that The London Club, "as underwriters for" the EURYBATES, acting through its counsel (the same counsel that was representing Ta Chi in that proceeding)
 
 
 17
 "will not object to the plaintiffs' seeking leave of the Court for an amendment of the complaint to include said underwriter as a named defendant by way of direct action. This is without waiver of jurisdictional or statute of limitation defense."
 
 
 18
 Thereafter, the Puerto Rico case was transferred to the Eastern District of Louisiana and consolidated with the limitation proceeding. The complaint of cargo was never amended to assert a direct action against The London Club,[9] and The London Club was never a party to either the Puerto Rico action or the limitation proceeding. After the transfer, counsel selected by The London Club no longer represented Ta Chi in the litigation, and Ta Chi was represented only by counsel retained by Hull Underwriters, which had furnished it counsel in that proceeding from its commencement.
 
 
 19
 The district court found that by consenting to the transfer of the cargo claims to the Louisiana district court in the limitation action The London Club had waived any defense of lack of personal jurisdiction.
 
 
 20
 Clearly, parties can waive lack of personal jurisdiction. 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1351 at 564 (1969). We have held that where a defendant originally requested transfer of a case to federal court in New York, it could not later complain that New York was not a proper forum, as the defendant had effectively consented to the jurisdiction and the venue of the New York court in making the original request. Liaw Su Teng v. Skaarup Shipping Corp., 743 F.2d 1140, 1149 (5th Cir.1984). The Second Circuit has held that where a party agrees to a stipulation and settlement, it has consented to the court's jurisdiction and cannot later contest personal jurisdiction in a suit to enforce the settlement agreement. Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir.1974).
 
 
 21
 However, we are unable to sustain the district court's determination of waiver in this case. Unlike the situation in Liaw Su Teng and Meetings & Expositions, here The London Club was never a party to the prior proceedings assertedly giving rise to the waiver; further, insofar as The London Club was mentioned in the Puerto Rico stipulation, it related only to the possibility that plaintiffs might seek to make it a party, which they did not, and expressly negated any waiver of jurisdictional defenses in that event. Moreover, the case at bar is a new and different suit, distinct from both the Puerto Rico and the limitation proceedings, which further distinguishes Liaw Su Teng. And, unlike Meetings & Expositions, no judgment was ever entered against The London Club, and it was never a party to any settlement agreement, in either of the prior proceedings. There is no basis for the finding that The London Club consented to personal jurisdiction in Louisiana for this declaratory judgment action.
 
 
 22
 Because we find that the district court had no jurisdiction over The London Club, we need not address whether Travelers has a claim against The London Club based on the P & I policy.
 
 
 23
 Reformation of the Indemnity Agreement Between Travelers and Hull Underwriters
 
 
 24
 Prior to the limitation proceeding, Hull Underwriters, acting for Ta Chi, obtained from Travelers a bond, equal to the value of the ship, to prevent arrest of the EURYBATES. See Supplemental Rule F. In order to procure the bond, Hull Underwriters executed an indemnity agreement which provided that Hull Underwriters would indemnify Travelers for items covered by the hull policy. After the judgment in the limitation proceeding in which the district court held that the EURYBATES was one hundred percent at fault and that the Navy was entitled to recover damages as an equitable subrogee,[10] Hull Underwriters refused to indemnify Travelers respecting that portion of the bond attributable to cargo claims, contending that cargo damages were covered by the P & I insurance and not the hull insurance. Travelers then brought this declaratory judgment action to reform the indemnity agreement, claiming that the parties had intended for it to cover all items covered by the Travelers bond.
 
 
 25
 Equity will reform an instrument to reflect the true intent of the parties where there has been a mutual mistake. Phoenix Indemnity Co. v. Marquette Gas Co., 320 F.2d 486, 492 (5th Cir.1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 658 (1964). The party seeking reformation has the burden of establishing by clear and convincing evidence that a mutual mistake was made. Lynal, Inc. v. Patrick Petroleum Co., 593 F.Supp. 1325, 1327 (W.D.La.1984). Parol evidence is admissible to prove the mutual mistake. Id. at 1327.
 
 
 26
 The district court found that the intent of the parties when the bond was issued and the indemnity agreement executed was that any exposure of the surety would be covered by the Hull Underwriters policies. Tucker Fitz-Hugh, an agent for Travelers, testified that, based on the representation made to him by Hull Underwriters' agents, he understood and believed that the nature of the claims asserted in the limitation proceeding were such that any loss would be covered by the hull policy. Travelers would not have issued the bond if its full amount was not covered by the insurance companies' indemnity. Peter Golia, the insurance broker who arranged the coverage with Hull Underwriters and who instructed Deane to arrange for the bond, testified by deposition that when the bond was obtained from Travelers he believed that the liabilities resulting from the limitation proceeding would fall within the coverage of the hull policy. He stated that this was the first instance he had heard of where a portion of a claim from this type of collision was not recoverable under the hull policy. Joseph Bernardo, an agent of Calvert's underwriters, testified that if the cargo payment made by the government was considered collision damages rather than cargo damages, the hull policy would have covered the damages, and that the district court's characterization of the claims as cargo damages was totally unexpected. There was evidence indicating that the attorney for Hull Underwriters had believed that any loss in the suit would be covered collision damages. Also, Hull Underwriters sent a telex to Travelers advising that the amount of the hull policy deductible had been paid, so that the policy then covered one hundred percent of the amounts in suit. The countervailing evidence was that the indemnity agreement specifically limited the recovery to the hull policy coverage, and it was the custom of the industry for cargo and hull to be insured by separate policies.
 
 
 27
 The district court's finding is based in part on its assessment of the credibility of the witnesses, and we will not depart from such an assessment except in the very rarest of circumstances. Ruiz v. Estelle, 679 F.2d 1115, 1131 (5th Cir.1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). Accepting the credibility assessments of the district court, the record adequately supports its finding that at the time the bond was issued both Hull Underwriters and Travelers believed and intended that Hull Underwriters would be responsible to Travelers for the entire amount of the bond. It was only after the district court's judgment in the limitation proceeding holding that the Navy was totally without fault, and, therefore, should recover from Ta Chi only as an equitable subrogee having paid Ta Chi's cargo claims, that Hull Underwriters believed--or realized--that the hull policy perhaps did not cover the full amount of the bond. The district court could find that when Hull Underwriters' agents arranged the bond with Travelers, they did not consciously have in mind that Hull Underwriters was likely liable for all these damages because the court would probably find that the Navy had some fault such that all damages would be collision damages. Rather, the evidence supports the finding that at the time the bond was purchased from Travelers and the indemnity agreement executed, Hull Underwriters' agents had already decided, and conveyed to Travelers' agent, that the hull policy would cover the judgment from the limitation proceeding, without there then being any conditional reservation regarding the outcome of the limitation proceedings and the Navy's degree of fault. This is hardly surprising, as it would be unusual, to say the least, for Travelers to issue such a bond without full insurance indemnity.
 
 
 28
 Since there is sufficient evidence to support the finding that at the time the bond was issued and the indemnity agreement executed both parties believed and intended that Hull Underwriters would be responsible to Travelers for the entire amount of the bond, the indemnity agreement was properly reformed to reflect the parties' intent.
 
 Conclusion
 
 29
 We determine that The London Club was not shown to have sufficient minimum contacts with Louisiana for purposes of this non-Louisiana-related suit, and that the district court accordingly erred in exercising personal jurisdiction over it. We determine that sufficient evidence supports the district court's finding that at the time the bond was issued both parties believed and intended that Hull Underwriters would be responsible for the entire amount of the bond. We therefore affirm the district court's reformation of the counter indemnity agreement based on mutual mistake. Our holdings on these two issues render it unnecessary to reach the other issues raised by the parties.
 
 
 30
 Accordingly, the judgment against The London Club is reversed and the district court is directed to dismiss the suit against The London Club for want of jurisdiction over it. Otherwise the judgment is affirmed. The cause is remanded for entry of appropriate judgment consistent herewith.
 
 
 31
 Judgment AFFIRMED in part and REVERSED in part; cause REMANDED.
 
 
 
 [1]
 Part of the EURYBATES' cargo was damaged in the initial collision. After the accident, temporary repairs were made and the ship proceeded on course to the United States. While in transit to the United States, the ship encountered heavy weather and the temporary repairs failed, resulting in additional damage to the cargo
 
 
 [2]
 Traditionally, hull marine insurance policies covered collision liability and damage to the ship and machinery on board, but not liability for damage to its cargo. This deficit in marine insurance was filled by the creation of mutual protection and indemnity clubs, which insured liability for personal injury and cargo loss aboard the vessels
 
 
 [3]
 The London Club claims that the cargo insurance was not in effect at the time of the accident because it had been retroactively cancelled. The district court held that such cancellation was against public policy; however, because we hold that the district court did not have personal jurisdiction over The London Club, we need not address the question of the retroactive cancellation of the P & I insurance
 
 
 [4]
 When two vessels collide at sea and cargo is damaged, both ships are liable in solido to the cargo owners for all the cargo, damage. However, usually the carrying vessel will have a defense under the Carriage of Goods by Sea Act (COGSA), such as an error in navigation defense, that will make it immune from liability to the cargo owner. In these instances, under the American rule the noncarrying ship is one hundred percent liable to cargo for the damages. These damages paid by the noncarrying ship are viewed as part of its collision damages. The collision damages are then divided proportionally between the carrying and noncarrying ship based on percentages of fault. United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). Thus, the carrying ship in effect pays for part of the damage to the cargo. The damage will normally be covered under the "collision and running down" clause of the hull policy which covers liability incurred for damage to another vessel and cargo through collision or striking. See G. Gilmore and C. Black, The Law of Admiralty 76 (2d ed. 1975)
 
 
 [5]
 As we hold that the district court did not have personal jurisdiction over The London Club, we do not consider the merits of The London Club's policy defenses
 
 
 [6]
 The United States, on behalf of the Navy, also brought an action in the court below against Hull Underwriters, seeking to recover on its judgment against Ta Chi for the cargo damage claims paid by the Navy. This action was consolidated in the district court with Travelers' suit against Hull Underwriters. The district court ruled that Hull Underwriters was liable to the Navy because Hull Underwriters owed Ta Chi for what Ta Chi owed the Navy as its judgment debtor. Hull Underwriters' responsibility to Ta Chi arising because it breached its fiduciary duty to inform Ta Chi that its policy did not cover the cargo claims. We do not pass on these issues since they are rendered immaterial in light of the undisputed fact that the Navy's judgment in the limitation proceeding for the cargo loss it paid runs against Travelers' Rule F bond (which is unquestionably sufficient) coupled with our holding that Hull Underwriters' liability to Travelers on the indemnity agreement extends to all Travelers' liability on the Rule F bond, including the Navy's cargo loss claim. Indeed, it is not clear that the Navy has not already fully collected all its damages from Travelers on the bond. The Navy, of course, does not seek double recovery. The only real dispute in respect to this aspect of the case is between Travelers and Hull Underwriters
 
 
 [7]
 Date Disc, Inc. and Marine Midland Bank were cited with approval in our opinion in Brown. 688 F.2d at 332
 
 
 [8]
 The plaintiffs there presented evidence showing that the P & I club's attorneys had arranged on behalf of the P & I club and the shipowners for the burial of a deceased Egyptian sailor with appropriate religious observances, for the repatriation of several sailors, and for numerous surveys and investigations regarding possible claims for damage or injury. 628 F.2d at 668
 
 
 [9]
 The Louisiana Direct Action Statute, LSA-R.S. 22:655, applies only where "the accident or injury occurred within the State of Louisiana."
 
 
 [10]
 See footnote 4, supra