SOUTHERN CLAY PRODUCTS, INC., Gonzales Clay Corporation, English China Clays Overseas Investments, Ltd., and English China Clays, P.L.C., Appellants,

v.

GUARDIAN ROYAL EXCHANGE ASSURANCE, LTD., Appellee.

No. 13–88–031–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 8, 1988.

Rehearing Denied Jan. 5, 1989.

Donald D. Gavlick, Gilbert Vara, Jr., Elizabeth Lindell, San Antonio, for appellants.

Michael G. Cosby, Michael L. Dinnin, Edward S. Hubbard, Clifford J. Gunter, II, Gale A. Boone, Houston, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal by Southern Clay Products, Inc., Gonzales Clay Corporation, English China Clays Overseas Investments, Ltd., and English China Clays, plc (the Clays) from the trial court's sustaining of appellee Guardian Royal Exchange Assurance, Ltd.'s (Guardian's) plea to the jurisdiction, based on a lack of *in personam* jurisdiction over Guardian. The Clays, plaintiffs below, sued Guardian, defendant below, to enforce a policy of insurance issued by Guardian to the Clays.

The suit arises from the death of an employee of Southern Clay Products, Inc. (Southern Clay), in an on-the-job accident, occurring in Texas. Several members of the deceased's family filed wrongful death suits against the Clays in federal and state courts in Texas. Guardian wrote a policy of insurance for English China Clays, plc,

an English company, providing coverage for the Clays, English China Clays and its American subsidiaries, for third-party liability occurring wherever in the world the Clays did business. Southern Clay, a subsidiary of English China Clays, is a Texas corporation with its principal place of business in Texas. Guardian is an English insurance company with its office and principal place of business in England. Guardian provided insurance to the American subsidiaries of Clay on the understanding that they would obtain underlying liability insurance from American insurers. The policy acknowledged that Southern Clay was located in the "U.S.A." but did not indicate that it was in Texas.

Southern Clay obtained underlying coverage from United States Fire Insurance Company (U.S. Fire). During the course of the underlying lawsuit against them, the Clays settled with the family of the deceased for $650,000 and U.S. Fire satisfied the claims on behalf of the Clays. The Clays claim that Guardian was the primary insurer and should reimburse U.S. Fire for the amounts it paid on their behalf. (U.S. Fire, having been subrogated to the rights of the Clays, is thus the real party in interest). Guardian, however, refused to participate in, or pay any part of, the settlement, on the ground that its liability extends only to excess coverage above the local insurer, U.S. Fire's coverage.

In the present action, the Clays complain that Guardian's refusal to extend coverage is a breach of its insurance agreement, or that, in the alternative, Guardian violated the Texas Deceptive Trade Practices Act and the Texas Insurance Code by making false representations and failing to disclose information concerning the insurance agreement.

Guardian specially appeared, claiming that the insurance agreement was strictly between two English companies, that it was negotiated and implemented in England, and that it had insufficient contacts with Texas to confer *in personam* jurisdiction. Guardian admitted that it issued a policy of insurance to English China Clays in 1980; that a 1981 endorsement to the policy extended coverage to companies within the United States, including Southern Clay; and that, under certain circumstances, the policy provided coverage for accidents occurring wherever the insureds did business.

The trial court granted appellee's motion to make a special appearance and dismissed the cause of action on the ground that Guardian negated every possible ground for *in personam* jurisdiction over it.

In three points of error the Clays complain that the trial court erred in concluding that: 1. the assumption of jurisdiction over Guardian would offend traditional notions of fair play and substantial justice; 2. Guardian did not avail itself of the benefits of the laws of the State of Texas; and 3. Guardian at no time relevant to this cause was doing business in the State of Texas. Because they are inextricably interrelated, we will discuss these points together.

■ A nonresident defendant has the burden of proof to negate all bases of personal jurisdiction. *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W. 2d 434, 438 (Tex.1982).

■ The Texas long-arm statute, Tex. Civ.Prac. & Rem.Code Ann. § 17.042 (Vernon 1986) (formerly Tex.Rev.Civ.Stat.Ann. art. 2031b), reaches as far as the federal constitutional requirements of due process will permit. *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex.1982), *reversed on other grounds*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *U–Anchor Advertising v. Burt*, 553 S.W.2d 760, 762 (Tex.1977).

The United States Supreme Court in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), reaffirmed the due process limits of *in personam* jurisdiction, as follows:

> The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction

over a nonresident defendant. "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Most recently we have reaffirmed the oft-quoted reasoning of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), that minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S., at 475, 105 S.Ct., at 2183. "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection' with the forum state." *Ibid.*, quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (emphasis in original).

■ Where defendant's contacts with the forum are continuous and systematic, courts within that State may exercise general jurisdiction over the defendant without regard to whether the particular controversy sued upon arose in the forum or elsewhere. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). The courts may also exercise specific jurisdiction over a defendant with a single or few contacts with the forum, under the following circumstances:

When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

*Id.*, 466 U.S. at 414, 104 S.Ct. at 1872.

■ We rely on a three-pronged test to determine the constitutional reach of the State's jurisdiction over defendants with only a single or few contacts with Texas, as follows:

(1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from or be connected with such act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice.

*Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 664 (Tex.1987); *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex. 1966); *Perez Bustillo v. Louisiana*, 718 S.W.2d 844, 846 (Tex.App.—Corpus Christi 1986, no writ).

On a number of occasions the federal courts have spoken on the application of the above due process analysis to a nonresident insurance company. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), a California resident purchased a life insurance policy from an Arizona insurer. A Texas insurer later agreed to reinsure the Arizona insurer's clients and issued a reinsurance certificate to the California resident. After the insured died, his beneficiary sued the Texas insurer in California for amounts due under the policy. Holding that California had *in personam* jurisdiction over the Texas insurer, the United States Supreme Court set forth generally the considerations in determining the insurer's obligation and the fairness of requiring it to answer claims in a distant forum:

It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant state in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could

not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality.

*Id.*, 355 U.S. at 223, 78 S.Ct. at 201.

In *Commonwealth of Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652 (1st Cir. 1980), a ship ran aground on a reef just off Puerto Rico and released a large amount of oil into the surrounding water, causing damage to the Puerto Rican coast. The ship's insurance underwriter was a British corporation with no contacts in Puerto Rico aside from the fact that ships it insured were regularly present in Puerto Rico. Even though the British insurer had not explicitly undertaken to insure ships within Puerto Rican waters (i.e., there was no explicit understanding that the ships insured would be sailing in Puerto Rican water), "such appearances were a readily foreseeable part of the normal course of business." *Id.,* at 669. Although foreseeability alone is not sufficient to connect a foreign corporation to the forum, *World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the *Colocotroni* court held that where the loss sued on arises from a "substantial subject of insurance regularly present in [the forum]" and the insurer has not limited his coverage to specified jurisdictions, the insurer is fairly subject to *in personam* jurisdiction in the forum, for the reason that the insurer could have easily protected himself but, presumably for business reasons, chose not to:

> By limiting coverage to specified jurisdictions, [the insurer] could be reasonably certain it would not be haled into court in an undesired forum. In other words, an insurer is not at the mercy of the insured owner's unilateral choice of destination in the same way a seller of chattels is at the mercy of the buyer.

*Colocotroni,* at 669–70; *see also Rossman v. State Farm Mutual Automobile Insur-*ance Co., 832 F.2d 282, 286 (4th Cir.1987); *Eli Lilly and Co. v. Home Insurance Co.,* 794 F.2d 710, 721 (D.C.Cir.1986); *American & Foreign Insurance Association v. Commercial Insurance Co.,* 575 F.2d 980 (1st Cir.1978).

The insurer's implied or explicit agreement to cover accidents occurring within the forum is an action "purposefully directed toward the forum State ... [which indicates the insurer's] intent or purpose to serve the market in the forum State...." *Asahi,* 107 S.Ct. at 1033; *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184.

In *Lilly,* a drug manufacturer distributed DES[1] to locations which sold the drug to pregnant women whose daughters subsequently developed cancer. The manufacturer sought a judgment declaring the scope of coverage of its liability insurer in the District of Columbia area, where some of the pregnant women had bought the drug. The insurer knew that the manufacturer distributed its products nationwide. The court allowed jurisdiction over the insurer on the ground that a products liability insurer should be held to answer in any forum where he could reasonable expect the products to be sold. The court reasoned that the broad scope of the risk was merely a part of the insurer's calculations in issuing such policies and charging premiums commensurate with the risk:

> Insurers must carefully gauge the riskiness of the products they insure. In determining the scope of the risk they have insured, insurers must consider the scale on which its insured has distributed a potentially dangerous product. The broader the distribution the greater the risk—and presumably the higher the premium. Thus insurers cannot be said to have failed to avail themselves, in a conscious and deliberate manner, of the benefits of doing business in those fora in which the insured manufacturer distributes its products. Moreover, an insurer has a commercial interest in knowing how, and to what degree, an insured

1. Diethylstilbestrol.

manufacturer has contacts with a forum state.

*Lilly,* 794 F.2d at 721.

In *Rossman,* an automobile liability policy was written and issued in Illinois. A clause of the policy covered the insured for losses or accidents within the entire United States. The insured moved to Virginia where he killed another driver in a car accident. The court found that the insurer was amenable to suit in Virginia, reasoning that, unlike a health insurer who generally risks suit only where the insured resides, an automobile liability insurer should "anticipate the risk that its clients [will] travel in their automobiles to different states and become involved in accidents and litigation there." *Rossman,* 832 F.2d at 286; *cf. August v. HBA Life Insurance Co.,* 734 F.2d 168, 173 (4th Cir.1984).

The *Rossman* court thus distinguishes different types of insurance as giving rise to varying ranges of foreseeable forums where a claim might arise. The insurer should know that some types of insurance, such as automobile liability, cover inherently mobile risks which, if not explicitly limited, will fairly subject it to liability wherever the subject of insurance travels. The type of risks insured against and the initial location of those risks are primary considerations in determining the reasonableness of subjecting the insurer to the jurisdiction of the forum where an occurrence creating liability finally arises.

As to the extension of coverage to the entire United States, the *Rossman* court noted that, "[p]resumably, [the insurer] offers this type of broad coverage to induce customers to buy its policies and to pay higher premiums for them. The benefits thereby accruing to [the insurer] are neither fortuitous nor incidental." *Rossman,* 832 F.2d at 287.

The *McGee* and *Colocotroni* line of cases are easily distinguishable from certain other cases which limit jurisdiction where the accident occurs outside the forum. Where the accident giving rise to the alleged duty to indemnify occurs outside the forum and the insured moves to the forum before asserting his claim, he must rely on general jurisdiction, based on the insurer's continuous and systematic contacts with the forum, rather than on specific jurisdiction, based on the duty arising out of an occurrence in the forum and as set forth in the line of cases discussed above. *See Rambo v. American Southern Insurance Co.,* 839 F.2d 1415, 1420 (10th Cir.1988); *Travelers Indemnity Co. v. Calvert Fire Insurance Co.,* 798 F.2d 826, 833 (5th Cir.1986); *Hunt v. Erie Insurance Group,* 728 F.2d 1244 (9th Cir.1984).

In the present case, an English insurer with no ties to the United States issued a policy of liability insurance to an English company with a Texas subsidiary, noted on an indorsement to the policy merely as being in the "U.S.A." An accident occurred in Texas involving the Texas subsidiary, and a dispute arose regarding the English insurer's obligations under the policy. The Texas subsidiary now claims that the English Insurer must answer for its alleged breach of the insurance contract in a Texas court.

▄▄▄ The risk to be protected against in the present case is not extended by the transport of people or products subject to causing liability into foreign states, but is extended by the transport of business enterprises, in the form of subsidiaries of the parent corporation. Notice of such enterprises was given to, and the associated risks accepted by, the insurer when the parties designated a subsidiary in the "U.S.A." in an endorsement to the policy and the insurer agreed to cover risks anywhere in the world. This is sufficient notice of the insured's substantial activities in the United States and that a substantial subject of insurance was regularly present in the states of this nation, to indicate the insurer's acceptance of the scope of the risk and its willingness to be haled into court in any state where a United States subsidiary resides and a covered accident occurs.

After considering the burdens on the defendant, the interests of the forum State,

and the plaintiffs' interest in obtaining relief, we hold that the exercise of personal jurisdiction over Guardian in Texas would not offend traditional notions of fair play and substantial justice, and that the trial court erred in concluding otherwise. *See Asahi,* 107 S.Ct. at 1033–34; *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. The trial court also erred in concluding that Guardian had not availed itself of the benefit of the laws of the State of Texas and that it was not "doing business" in Texas for purposes of *in personam* jurisdiction. Appellants' points of error are sustained.

The judgment is reversed and this cause is remanded for trial.