Decided April 27, 1989

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

FLORENCE KIRBY, personal          )      CIVIL ACTION NO. 87-0022
representative of the heirs of    )
Sylvestre Selepeo, Isidro Romolor )
and Enrique Moteisou and guardian )
ad litem for the minor heirs,     )
                                  )
          Plaintiff,              )
                                  )
          v.                      )              DECISION
                                  )
SIDNEY QUAN, TOKIO MARINE AND     )
FIRE INSURANCE CO., NORMAN        )
TENORIO, TRANSPACIFIC BROKERS,    )
INC., and PRISCILLA QUAN,         )
                                  )
          Defendants.             )
_____)

On September 23, 1986, the motor vessel Olwol sank in a typhoon while enroute to the the northern islands. Thirteen crew members were lost at sea as a result of the accident. The heirs of three of the crew members (Sylvestre Selepeo, Isidro Romolor, and Enrique Moteisou) brought this suit through their personal representative Florence Kirby. Plaintiffs' amended complaint names Sidney Quan, Tokio Marine and Fire Insurance Co. (Tokio Marine), Norman Tenorio, Transpacific Brokers Ind., and Priscilla Quan as defendants. The complaint cites Federal Rule of Civil Procedure 9(h), Admiralty and Maritime, and 4 CMC section 7502(e), the

797

Commonwealth's direct action statute, as authority for this Court exercising jurisdiction over Tokio Marine.

The complaint contains six separate claims, only the first three of which are relevant to this motion. The first claim, titled "Moragne Claim," is founded in negligence and seeks $5,000,000 in compensatory damages and $5,000,000 in punitive damages for each of the three decedents' estates. This claim is based on the assumption that the deaths occurred within the territorial waters of the Commonwealth.

In the second claim, titled "Death on the High Seas," plaintiffs seek $10,000,000 each. This claim is an alternative to the first claim and assumes that the deaths occurred outside of the territorial waters of the Commonwealth .

The third claim seeks damages for pain and suffering experienced by decedents in the interim between the time they fell into troubled waters and the time they died. Plaintiffs request $2,000,000 each for these damages.

In June, 1986, Tokio Marine issued to Quan and Tenorio a protection and indemnity policy insuring them against sums incurred as a result of ownership of the Olwol. The policy was in effect at the time the boat sank. Plaintiffs rely on this insurance policy in conjunction with the Commonwealth's direct action statute as the basis for jurisdiction over Tokio Marine in claims one, two, and three.

Tokio Marine has filed a motion for summary judgment which includes an affidavit from Kiroyuki Tagata, claims manager

for Tokio Marine. Hagata states in his affidavit that Tokio Marine paid its insured, Sidney Quan[1], the full policy limits. Tokio Marine argues that it has, therefore, satisfied its obligations under the the protection and indemnity policy. According to Tokio Marin., upon the sinking of the Olwol, it faced "near certain" liability under the policy. It chose to pay Quan the full limits of the policy which it has done. Tokio Marine maintains that the direct action statute allows a third-party to sue only to the limits of the policy, no more. Since the policy limits have been exhausted, Tokio Marine argues that it should, as a matter of law, be dismissed from the suit.

Plaintiffs dispute this argument. They contend that Tokio Marine did not discharge its obligations under the insurance policy when it paid Quan, who, coincidentally, is an agent of Tokio Marine. Plaintiffs argue that under CNMI law any settlement for wrongful death must be approved by the Court, particularly when the beneficiaries include minor children, as in this case. See, 7 CMC §§ 2101, 2103(b). Plaintiffs contend that Tokio Marine's payment to Quan prior to legal liability attaching to Quan and without court approval renders the payment gratuitous.

The motion before the Court raises several important issues, issues which appear to be of first impression in the Commonwealth. The first issue is whether the Commonwealth's

---

[1]  Norman Tenorio is also insured under the policy but he has assigned his rights to the insurance proceeds to Sidney Quan.

direct action statute applies to indemnity[2/] policies. Tokio Marine suggests that it does not. Plaintiffs argue that the issue is not properly before the Court at this time since Tokio Marine did not raise it in its initial motion. They argue alternatively, however, that indemnity policies are included within the direct action statute.

The issue is one of jurisdiction. Plaintiffs have included 4 CMC section 7502(e) under a separate jurisdictional heading in their amended complaint and rely on it as the sole source of jurisdiction over Tokio Marine for these three claims. Jurisdiction is an issue which can be entertained at any time in a proceeding, whether at the instance of a party or sua sponte by the Court.

The statute in question is 4 CMC section 7502(e) which states:

> Liability policy: direct action. On any policy of liability insurance the injured person or his or her heirs or representatives shall have a right of direct action against the insurer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in the Commonwealth, and whether or not the policy contains a provision forbidding the direct action; provided, that the cause of action arose in the Commonwealth. The action may be brought against the insurer alone, or against both the insured and insurer.

---

[2/] Under a strict indemnity insurance policy, the insurer is liable only for money actually paid to an injured party by the insured. Da Costa v. General Guaranty Insurance Company, 226 So.2d 104, 105 (Fla. 1969). A liability insurance policy differs in that the insurer becomes liable for damages for which any covered person becomes legally liable. Metropolitan Life Insurance Co. v.McCarson, 467 So.2d 277, 279 (Fla. 1985).

Defendant cites <u>Degnan v. Rhode Island Mutual Liability Insurance Company</u>, 154 A. 912 (R.I. 1931), for the proposition that direct action statutes do not apply to indemnity policies. Plaintiffs cite <u>Olympic Towing Corp. v. Nebel Towing Co.</u>, 419 F.2d 230 (5th Cir. 1969), <u>overruled</u> on <u>other</u> <u>grounds</u>, <u>Crown Zellebach Corporation v. Ingram Industries Inc.</u>, 783 F.2d 1296 (5th Cir. 1986), and <u>Gonzalez v. Caribbean Carriers, Ltd.</u>, 379 F.Supp. 634, 637-638 (D.P.R. 1974) for the opposite conclusion.

The Commonwealth's insurance law is embodied in 4 CMC sections 7101 et seq. There is no formal legislative history accompanying the law. However, the Commission Comment which follows section 7502 indicates that subdivision (b)(2) of section 7502 was taken from section 43351 of the Government Code of Guam. Comparing Guam's insurance law with the Commonwealth's insurance law reveals that the laws are virtually identical. <u>Cf.</u> Government Code of Guam § 43000 et seq., <u>with</u> 4 CMC §7101 et seq. The only real change in most instances is replacing the word "Guam" with the word "Commonwealth." The direct action statutes are identical except for the change in the names.

Guam adopted this law from the Louisiana direct action statute, L.R.S. 22:655. <u>Kelly v. Capital Insuance ans Surety Co.</u>, 241 F.Supp. 605, 606-07 (1965) <u>rev.</u> on <u>other</u> <u>grounds</u> 361 Fed.2d 567 (9th Cir. 1966) <u>cert</u> <u>denied</u> 385 U.S. 1025 (1967). Indirectly, then, the Commonwealth adopted its direct action statute from Louisiana.

■,■ The adoption of a statute from another jurisdiction carries with it previous judicial interpretations of the statute from the other jurisdiction. Carolene Products Co. v. United States, 323 U.S. 18, 16 (1944). The courts have interpreted the Louisiana direct action statute to include marine protection and indemnity policies. See Continental Oil Co. v. Bonanza Corp., 677 F.2d 455, 460 (5th Cir. 1982). The Commonwealth adopted the Louisiana direct action statute in 1983, see P.L. 107, and based on Carolene Products it also adopted this interpretation. The Court so holds, based on this reasoning, that the protection and indemnity policy issued by Tokio Marine falls within the Commonwealth's direct action statute.

Having disposed of that issue, the Court turns to the next substantive issue raised by this motion, whether Tokio Marine's act of paying Sidney Quan $199,000 dispensed of its obligations under the policy and entitles it to summary judgment.

Plaintiffs claim that Tokio Marine's payment to Quan was gratuitous. They argue that no legal liability had attached when the money was paid to Quan. Further, they argue that pursuant to the direct action statute they are third-party beneficiaries under the insurance contract and that any settlement without their participation is null and void. Finally, they argue that the settlements arrived at by Quan, without court approval, are contrary to CNMI law and consequently are void.

The existence of an insurance carrier is normally inadmissible in a civil proceeding in tort. See, Fed.R.Evid. 411;

**802**

Appleman, Insurance Law and Practice (Appleman) § 4861. This policy has been uniformly enforced by the courts in an effort to prevent perceived prejudice to the insurer by injecting the potential of a "deep pocket" into the minds of the jurors. Appleman, § 4861.

Direct action statutes change this focus. Appleman, § 4862. The policy of direct action statutes is to shift the protection from the insured to the general public. Id. The purpose is to protect the public at large by providing the injured party with an opportunity for remuneration from financially responsible sources, the insurers. Capital Insurance & Surety Co. Inc. v. Glove Indemnity Company, 382 F.2d 623, 625 (9th Cir. 1967).

The Commonwealth's direct action statute is constructively incorporated into every insurance policy having effect in the Commonwealth. See, Humble Oil and Refing Co. v. M/V John E. Coon, 207 F.Supp. 45 (E.D. La. 1962). The rights of the injured person become vested upon the happening of an event which gives rise to a cause of action and these rights cannot be altered by acts of the insurer or the insured. Pennsylvania Casualty co. v. Upchurch, 139 F.2d 892 (5th Cir. 1943).

Assuming plaintiffs died as a result of the sinking of the Olwol, any damages their estates may recover from Quan and Tenorio are, at least arguably, covered by the insurance policy issued by Tokio Marine. Plaintiffs' possessed a cause of action against Tokio Marine under the direct action statute at the time the ship sank.

**803**

Plaintiffs' cause of action cannot be defeated by an agreement between Quan and Tokio Marine. Nor can plaintiffs' rights under the contract be extinguished without their consent.

Under paragraph 9.1 of the policy, Tokio Marine agreed to indemnify Quan for "sums paid" by Quan to satisfy its obligations stemming from liability incurred from the boat. Thus, once Quan has paid an injured person, Tokio Marine is required to reimburse Quan. The facts as presented thus far reveal that at the time Tokio Marine paid Quan, Quan had yet to expend any sums to satisfy obligations stemming from the sinking of the boat. Tokio Marine's payment to Quan did not satisfy its obligations under the policy since Quan had not paid any of the decedent's estates. This money was not paid under the terms and conditions of the policy, which plaintiffs have a right to strictly enforce. Exchange, 364 P.2d at 837.

For these reasons, Tokio Marine's motion for summary judgment is denied.